Filed 6/27/13  P. v. Rios CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046285 |
| v. | (Super. Ct. No. 09NF2580) |
| OMAR MARTINEZ RIOS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Frank F. Fasel, Judge. Affirmed as modified.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Anthony Da Silva and Theodore M. Cropley, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury found Omar Martinez Rios guilty of committing a forcible lewd act on a child under the age of 14 (Pen. Code, § 288, subd. (b)(1) [count 1]; all further statutory references are to the Penal Code unless otherwise specified), continuous sexual abuse of a child under the age of 14 (§ 288.5, subd. (a) [count 6]), committing a lewd act on a child under the age of 14 (§ 288, subd. (a) [count 7]), evading police while driving recklessly (Veh. Code, § 1800.2 [count 2]), resisting an officer (§ 148, subd. (a)(1) [count 3]), and assaulting (§ 241, subd. (c) [count 4]) and battering (§ 243, subd. (b) [count 5]) a peace officer. Rios contends the trial court erred by failing to instruct on battery as a lesser included offense of committing a lewd act on a child under the age of 14 as charged in count 7. He also argues his sentence under the One Strike law (§ 667.61, subd. (c)) for continuous sexual abuse of a child (§ 288.5), as charged in count 6, violates ex post facto provisions. Finally, Rios argues the trial court violated section 654 by imposing separate punishment for evading arrest, resisting arrest, and assault and battery on a peace officer.

We conclude any error in failing to instruct the jury that battery was a lesser included offense of committing a lewd act on a child was harmless, Rios's sentence under the One Strike law does not violate ex post facto provisions, and the trial court erred by imposing separate punishment for resisting arrest. We order the judgment modified to stay (§ 654) the one-year term for resisting arrest (§ 148, subd. (a)(1); count 3). As modified, we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Rios began a relationship with Maria H. around September 2006, and in December he moved into Maria's Anaheim home with her five children. Rios intermittently lived with Maria and her children over the next three years. From 2006 to

2

2009, Rios on numerous occasions molested Maria's three daughters: Araceli (born in September 1996), M. (May 1999), and Alicia (May 2000).

Alicia testified that in March 2007, when she was six years old, Rios grabbed her by the shoulders when she emerged from the bathroom and placed his mouth on her neck for about five seconds, biting her and leaving a mark. Maria described the mark as a "hickey," which Rios sometimes gave her during intimate encounters. According to Maria, Alicia was crying after the incident. Alicia went to school, where a teacher saw the hickey and called the police. Alicia had previously seen Araceli with a similar mark on her neck, and she told a child abuse (CAST) interviewer that she saw Rios bite her sisters on subsequent occasions. After the incident with Alicia, Maria evicted Rios and the Social Services Agency briefly removed the children from the home. Rios returned about a week later.

M. testified that when she was seven and eight years old, after Rios began living with the family, Rios touched her breasts and vagina more than once. He touched her with his hands, and also touched her with his "bottom part" (penis) about two times. When he tried to put his penis inside her, "white stuff" came out. He also had her touch his private part. The incidents occurred in the early morning while she was in bed. Rios asked her if she liked how it felt and told her not to tell anyone.

M. explained the family had lived at three locations in Anaheim and one in La Habra. Rios touched her two or three times at each of her Anaheim homes, but did not touch her when they resided in La Habra. She also stated he touched her two times at one house and one time at a different house. She turned away from him during the incidents and never looked down to see his penis, but she felt it on her body. Rios put the "white part" in his hand and tried to show her, but she looked away. She recalled one

3

incident occurred on a school day, and a second incident occurred a few days later on a Saturday. A third incident occurred the following Sunday, and all three incidents occurred within a span of six or seven days. M. told a CAST interviewer that Rios gave her "sucking" marks (hickeys) on her neck when he got into bed with her.

M. spoke to her mom a day after the second occurrence. M. told her mother Rios had sexually abused her by asking her to touch him. Maria ordered Rios to leave the home and reported the abuse to La Habra police several weeks later in August 2007. Rios continued to visit the family however, sometimes climbing through windows. Maria claimed he threatened to harm the children if she called the police. Maria told a police officer in a pretrial interview she and Rios had been planning to resume their relationship as of September 2009.

On September 4, 2009, a few days after Araceli turned 13, Rios told her he would give her money if she helped him sell jewelry at a restaurant. They left around 6:30 p.m. in his white Ford Expedition. Instead of going to the restaurant, Rios drove to a residential area ostensibly to pick up business cards. Araceli complied with his direction to get into the back seat, but refused his command to remove her shirt. He removed her underwear, and although she told him to stop and pushed him away, Rios grabbed her arms, pushed her onto her back, and penetrated her vagina with his penis. He also kissed her upper neck and face. The incident lasted at least a minute.

Meanwhile, police officers arrived to investigate a neighbor's report of lewd behavior. One of the officers saw Rios with his pants around his knees climb into the front seat. Araceli was lying in the back seat with her pants around her ankles. The officer ordered Rios out of the car, but he sped away. Officers pursued him at high speeds on surface streets for several miles. Rios nearly collided with several cars and ran

4

through at least one stop sign. When traffic forced Rios to stop momentarily, one of the officers exited the patrol car and approached the Expedition. Araceli motioned for help and tried to open the rear passenger door. Rios ignored the officers and fled again. The officers ultimately executed a "PIT maneuver" to hit the back of Rios' vehicle, which spun and came to a stop. When Rios began to drive away again, one of the pursuing officers collided with him to prevent further forward movement.

The officers, with guns raised, ordered Rios and Araceli out of the Expedition. Araceli ran to a nearby officer, who placed her in a patrol vehicle. She told the officer Rios put his penis inside her vagina despite her screams and demands to stop.

Rios did not initially comply with the officers' commands to keep his hands up, but ultimately exited the vehicle as directed, with his hands on the back of his head, fingers interlaced, and walked backwards toward officers waiting to take him into custody. Officer Matthew Ellis placed one hand on Rios's hands and patted him down for weapons. Ellis took Rios by the wrists and brought his hands to the small of his back. Rios resisted by extending his arms, bending his knees, and thrusting his hands toward his waistband. Ellis believed Rios might be reaching for a weapon or trying to escape. Ellis let go of Rios's left wrist, held his right wrist, grabbed his collar, and pushed him 10 feet up against a patrol car. Rios tried to twist free and pull away. Ellis felt unable to gain control of Rios and decided to take him to the ground. He let go of Rios's right wrist, reached around Rios's chest and grabbed his left shoulder, pulling him to the ground. Rios continued to fight with Ellis while on the ground, requiring five officers to assist in handcuffing Rios. Ellis suffered abrasions and scratches to his right elbow while taking Rios to the ground. Rios suffered abrasions to his face when he hit the ground following the takedown.

5

DNA found on Rios's penis matched Aracelli's DNA profile. Rios's DNA was found on Aracelli's neck, left leg, and mouth area. In an interview conducted after his arrest, Rios admitted trying to grab Aracelli's breast and forcing her to have sexual intercourse.

Following a trial in October 2011, the jury convicted Rios of the offenses listed above. The trial court sentenced Rios to prison for an aggregate term of 45 years to life.

II

DISCUSSION

A. *The Trial Court Did Not Prejudicially Err in Failing to Instruct on Battery as a Lesser Included Offense of Committing a Lewd Act on a Child.*

Rios contends the trial court erred by failing to instruct the jury sua sponte on simple battery (§ 242) as a lesser included offense of committing a lewd act on Alicia (count 7). Generally speaking, an instruction on a lesser included offense is required where the statutory elements of the greater offense include all the elements of the lesser offense so that the greater offense cannot be committed without committing the lesser offense. (*People v. Cook* (2001) 91 Cal.App.4th 910, 918.) A trial court has a sua sponte duty to instruct on all necessarily included offenses supported by the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149.)

There is a split of authority concerning whether battery is a lesser included offense of committing lewd acts on a child under age 14. (Compare *People v. Santos* (1990) 222 Cal.App.3d 723, 739 [battery not a lesser included offense of forcible lewd acts on a child under age 14 (§ 288, subd. (b)), forcible oral copulation (§ 288a, subd. (c)), and forcible penetration by a foreign object (§ 289, subd. (a))] with *People v.*

6

*Thomas* (2007) 146 Cal.App.4th 1278, 1293 (*Thomas*) [battery is a lesser included offense of section 288, subd. (a)].) The issue is currently pending before the California Supreme Court. (*People v. Gray*, review granted December 14, 2011, S197749, and *People v. Shockley*, review granted March 16, 2011, S189462.)

Assuming battery (§ 242) is a lesser included offense of section 288, subdivision (a), the failure to instruct sua sponte on a lesser included offense "is not subject to reversal unless examination of the entire record establishes a reasonable possibility that the error affected the outcome." (*People v. Breverman, supra,* 19 Cal.4th at p. 165.) Count 7 of the information charged that "[o]n or about and between February 01, 2007 and March 06, 2007" Rios committed a lewd act on Alicia. As related above, Alicia testified that in March 2007, when she was six years old, Rios grabbed her by the shoulders, placed his mouth on her neck, and gave her a hickey. A hickey is generally considered a sexual act, and here there was evidence Rios had given hickeys to Maria during intimate sexual encounters. M. also reported Rios gave her hickeys while sexually abusing her, and Alicia saw a hickey on Araceli. Nothing in the record suggests Rios's intent in giving Alicia the hickey was other than to arouse, appeal to, or gratify his or Alicia's lust, passions, or sexual desires.

Under these circumstances, it is not reasonably probably the jury would have found Rios guilty of simple battery had the court given the jury that option. (See *Thomas*, *supra*, 146 Cal.App.4th at pp. 1293-1294 [defendant claimed he touched boy's buttocks to wake him up but "in light of the evidence of defendant's other sexual offenses against [the boy] and the other boys, it is not reasonably probable that the jury would have accepted defendant's account over [the boy's] and concluded that the incident was merely an offensive touching rather than a lewd act within the meaning of section 288"].)

7

Consequently, any conceivable error in failing to give an instruction on the lesser included offense was harmless.

B.     *Rios's Sentence under the One Strike Law Does Not Violate Ex Post Facto Provisions*

Rios contends his sentence under the One Strike Law (§ 667.61) violated federal and state constitutional protections against ex post facto laws. We are not persuaded.

"'The imposition of punishment which, after commission of a crime, has been increased or made more burdensome is barred by the ex post fact clause of the Constitutions of both the United States (art. 1, § 10, cl. 1) and [the] State of California (art. 1, § 9) . . . .'" (*People v. Palacios* (1991) 56 Cal.App.4th 252, 256-257 (*Palacios*).) Thus, ex post facto provisions apply when a law is changed to increase punishment for acts committed before the law took effect. (*Id.* at p. 257 [critical question is whether the defendant's offensive acts were completed before the law changed].)

Here, the prosecution charged Rios in count 6 with continuous sexual abuse of M. (§ 288.5, subd. (a)) between May 22, 2006, and May 21, 2009.[1] The prosecution also alleged Rio's continual sexual abuse of M. made him eligible for harsher punishment under section 667.61, subdivision (b), which imposes a 15-year-to-life sentence for violating section 288.5, subdivision (a).

---

[1]     Section 288.5, subdivision (a) provides: "Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years."

Rios correctly notes the sentencing scheme imposed under section 667.61 did not apply to section 288.5 crimes until September 20, 2006. Rios may not invoke ex post facto provisions, however, if he committed a lewd act after September 20, 2006. As *Palacios* explained, "[w]here an offense is of a continuing nature, and the conduct continues after the enactment of a statute, that statute may be applied without violating the ex post facto prohibition." (*Palacios, supra*, 56 Cal.App.4th at p. 257.)

Rios concedes ex post facto principles do not apply if he committed a lewd act after September 20, 2006, but emphasizes the jury was not asked to make specific findings on when the crimes occurred. He therefore reasons "the jury could have based its verdict on a three month period occurring prior to section 288.5 becoming a specified crime under section 667.61, subdivision (c), [therefore] the constitutional protection against ex post facto application of law requires reversal of the sentence as to Count 6."

The evidence at trial, however, reflected all of Rios's molestations of M. occurred after September 20, 2006. Maria testified Rios did not begin living with the family until December 2006. She and the children lived with Rios off and on until 2009 at four locations; Fay Lane in Anaheim, Fourth Avenue in La Habra, Narda Street in Anaheim, and Vermont Street in Anaheim. M. testified the abuse occurred after Rios began living with the family. She spoke to her mother a day after Rios committed his second abuse. According to Maria, M. disclosed the abuse when they were living on Fay Lane. Maria reported the abuse to La Habra police in August 2007, a few weeks after M.'s disclosure. M. stated Rios touched her two or three times at each of her Anaheim homes, but did not touch her in La Habra. The first two incidents occurred on Fay Lane in Anaheim, a third happened at the Narda house. Although M.'s testimony varied from her pretrial CAST statements concerning details of the abuse, the evidence indicated Rios

sexually abused M. three to nine times after December 2006. Because the evidence shows all of the abuse occurred after the Legislature added section 288.5 to section 667.61 in September 2006, the trial court's sentence did not violate ex post facto provisions.[2]

The cases cited by Rios are distinguishable. In *People v. Riskin* (2006) 143 Cal.App.4th 234, the information charged the defendant with commission of a forcible lewd act (§ 288, subd. (b)) occurring between June 1994 and June 1998. The One Strike law as to that offense took effect in November 1994. The victim testified to various lewd acts, but her testimony was inconsistent about how old she was when the defendant committed the acts. Testimony from the girl's mother and other evidence suggested the offense occurred before the effective date of the One Strike law. Here, section 288.5 proscribes a continuing offense, and substantial evidence shows all of Rios's lewd acts occurred after the One Strike law took effect. Rios's reliance on *People v. Hiscox* (2006) 136 Cal.App.4th 253, 257-261 is also unavailing. There, the victims did not identify when they were molested with any specificity, no other evidence reliably connected the various charges to any specific time frame, and the trial court failed to instruct the jury to determine whether the offenses were committed on or after the enactment date of the statute.

---

[2] An officer who interviewed Rios at the time of his arrest in September 2009 testified Rios claimed he had known Maria about two years, he met her at a bar, and he moved into her residence about three days after meeting her. He had moved out about four months before the September 2009 interview, and then moved back in about 15 days before the interview. If Rios's statements were true, all the abuse of M. occurred after September 2007.

10

C.  *The Trial Court Erred by Imposing Separate Punishment for Resisting Arrest*

The trial court imposed a two-year concurrent term for reckless driving while fleeing a police officer (Veh. Code, § 2800.2; count 2), a one-year suspended jail sentence for resisting arrest (§ 148; count 3), a one-year suspended jail sentence for battery on a peace officer (§ 243, subd. (b); count 5), and stayed (§ 654) a one-year jail sentence for assault on a peace officer (§ 241, subd. (c); count 4).  Rios contends the trial court violated section 654 by imposing punishment for resisting arrest (count 3) and battery (count 5) because these offenses "were committed in close temporal proximity to" the reckless driving offense (count 2) and "were part of appellant's single, indivisible and uninterrupted course of conduct aimed at the single objective of escaping capture by the police."  The Attorney General responds the trial court could have found Rios had separate and independent criminal objectives in driving recklessly while fleeing police, resisting arrest, and battering a peace officer.

Rios's contention is of no practical significance because Rios is serving a lengthy prison sentence on the felony sex charges, and the trial court suspended sentence on the misdemeanor charges.  Nevertheless, we must address his claims.

Section 654 provides, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)  Section 654 applies not only where there is only one "act" in the ordinary sense but also where a course of conduct violates more than one statute and comprises an indivisible transaction.  (*Neal v. State of California* (1960) 55 Cal.2d 11, 19 (*Neal*).)  "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of

11

section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Id.* at p. 19, italics added.) The policy behind section 654 is to prevent double punishment for the same criminal objective, despite the commission of separate crimes. (*People v. Pena* (1992) 7 Cal.App.4th 1294, 1311.) This "is to insure that the defendant's punishment will be commensurate with his criminal liability." (*Neal*, *supra*, at p. 20; see also *People v. Latimer* (1993) 5 Cal.4th 1203 (*Latimer*).) Crimes of violence against multiple victims are separately punishable, however, even if to accomplish a single criminal objective. (*Latimer*, *supra*, at p. 1212.)

The court correctly punished Rios for reckless driving while fleeing a police officer (count 2) and battery against Ellis (count 5). Violation of Vehicle Code section 2800.2 did not involve an act of violence against a peace officer. (See *People v. Garcia* (2003) 107 Cal.App.4th 1159 [multiple convictions of section 2800.2 where each count named a separate officer pursuing the defendant erroneous because actus reus of crime does not involve an act of violence against the officer].) Battery is defined as a "willful and unlawful use of force or violence upon the person of another." (§ 242.) The trial court reasonably could find Rios's intent and objective in battering Ellis was to injure him in an angry response to Ellis's efforts to handcuff Rios. In contrast, the trial court could find Rios drove recklessly to avoid apprehension and escape the severe legal consequences he undoubtedly knew awaited him. These are distinct criminal objectives warranting separate punishment.

Rios could not be separately punished for resisting Ellis's efforts to arrest him (count 3) and battery (count 5) on the same officer, however. Section 148, subdivision (a)(1), punishes "[e]very person who willfully resists, delays, or obstructs any

12

. . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed. . . ." As recounted above, the battery occurred while Rios resisted Officer Ellis's attempts to handcuff him. Rios's intent and objective in using force against Ellis was to injure him and delay the arrest. The crimes occurred at the same time and place. There is insufficient evidence Rios had a separate intent and objective in committing these two crimes. (*People v. Martin* (2005) 133 Cal.App.4th 776, 781 [§ 654 applies to stay execution of sentence of either resisting arrest or battery on a peace officer, unless the multiple-victim exception is applicable].)

## III

### DISPOSITION

The judgment is modified (§ 1260) to stay (§ 654) the one-year term for resisting arrest (§ 148, subd. (a)(1); count 3). The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.


ARONSON, ACTING P. J.


WE CONCUR:


FYBEL, J.


THOMPSON, J.


13