Filed 8/26/13  P. v. Plascencia CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>JOSE PLASCENCIA,<br><br>     Defendant and Appellant. | C068979<br><br>(Super. Ct. No. 09F06199) |

Defendant Jose Plascencia, an inmate at New Folsom Prison, physically fought with Officer Wallace, Lieutenant Ventimiglia and Sergeant Quinn.  He claimed he acted in self-defense in response to Wallace's "sudden aggression" and ensuing actions by other officers.  The jury found defendant guilty of one count of battery by a prisoner of a non-confined person (Ventimiglia) and two counts of obstructing an officer in the performance of his duties (Ventimiglia and Quinn).  It acquitted him of battery and obstruction of Wallace.

Defendant appeals his conviction, contending the trial court failed to adequately instruct the jury on self-defense.  He argues the court had a duty to instruct sua sponte

1

with CALCRIM No. 3470 (3470) and the failure to do so resulted in prejudicial error. As we explain, we disagree and shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Charges*

The People charged defendant with two counts of battery by a prisoner on a non-confined person (Pen. Code,[1] § 4501.5) as against both Wallace (count one) and Ventimiglia (count two) and three counts of obstructing an officer in the performance of his duties as against Wallace (count four), Ventimiglia (count three) and Quinn (count five). (§ 69) They also alleged defendant had sustained three prior serious felony convictions. (§§ 1192.7, subd. (c), 667, subds. (b)-(i), 1170.12.)

*People's Case at Trial*

Defendant was an inmate in the general population of New Folsom prison. In April 2009, defendant was in an interview room; Wallace and Ventimiglia were also in the room, while Quinn remained outside.

The interview was going well; defendant was cooperative, no angry or harsh words were exchanged, and defendant was not handcuffed. At the end of the interview, defendant stood up, turned his back toward Wallace, and placed his hands behind his back to be handcuffed. He then suddenly spun toward Wallace, said "don't take this personal" and punched Wallace in the face. Wallace stumbled backwards. Defendant moved toward him and threw another punch. Wallace grabbed defendant's wrist and the men struggled as Ventimiglia came to assist Wallace. Ventimiglia grabbed defendant's shoulder and defendant hit him in the eye. Defendant continued to struggle with Ventimiglia and Wallace, punching at them and thrashing around to avoid being handcuffed. Quinn saw the men struggling and defendant swinging his closed fist at

---

[1] Further undesignated statutory references are to the Penal Code.

2

Wallace. He forced the door open and defendant, Wallace and Ventimiglia fell to the ground. Quinn tried to restrain defendant in a bear hug and by grabbing his right hand and holding defendant against the wall. Defendant continued to resist, thrashing and swinging his arms. With the assistance of additional staff, defendant was ultimately subdued.

*Defendant's Case at Trial*

Defendant admitted he struggled with the officers, but claimed he acted in self-defense. He testified that as Wallace was placing him in handcuffs, Wallace asked if defendant had any information on misconduct by other inmates, to which defendant responded, "Fuck no." Wallace then aggressively grabbed defendant's wrists, yanked his collar and hit the back of his head. Defendant then turned and hit Wallace. As Wallace was coming back at defendant, defendant tried to hit Wallace again and missed. Ventimiglia then came running toward defendant with his fist raised, looking as though he was going to hit defendant. Defendant was afraid he was going to be hurt by Ventimiglia, so defendant hit him. He thought the officers were going to beat him because he refused to provide information on other inmates. During the struggle, the officers "hit him all over." Defendant denied ever saying it was not "personal."

*People's Rebuttal Case*

Wallace denied aggressively gabbing defendant's hands, the back of his collar or hitting him the head. He also denied asking defendant to inform on other inmates. Ventimiglia denied that either he or Wallace asked defendant to inform on other inmates and denied punching defendant in the face or hitting him in the head.

*Instructions and Verdicts*

The trial court instructed the jury that as an element of both battery and assault, the prosecution had to establish defendant did not act in self-defense. It also instructed that an officer is not lawfully performing his duties if using unreasonable or excessive force. The trial court further instructed the jury that a defendant is not guilty of resisting an

3

officer who is lawfully performing his duties if the officer is using unreasonable or excessive force. It described and defined the lawful performance of a custodial officer's duties and a police officer's duties, each of which includes the provision that an officer is not lawfully performing his duties if using unreasonable or excessive force. Those instructions also specify that if an officer uses unreasonable or excessive force, a person may lawfully use reasonable force to defend himself. The trial court instructed the jury that a person's use of force to defend himself is reasonable if (1) it is the amount of force he actually believes is reasonably necessary to protect himself and (2) is no more force than a reasonable person in the same situation would believe is necessary. It did not read 3470, regarding the general right to self-defense; neither party requested that instruction.

The jury found defendant guilty of one count of battering Ventimiglia and obstructing Ventimiglia and Quinn. It acquitted him on all counts related to Wallace. In bifurcated proceedings, the jury found the prior conviction allegations true. The trial court struck one of the prior convictions and sentenced defendant to 25 years to life in prison.

## DISCUSSION

### I

*Overview*

Defendant contends the trial court prejudicially erred in failing to sua sponte instruct the jury on self-defense as set forth in 3470. As relevant to defendant's claims, 3470 provides that:

"The defendant acted in lawful self-defense . . . if:

"1. The defendant reasonably believed that he was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully;

"2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;

"AND

4

"3. The defendant used no more force than was reasonably necessary to defend against that danger.

"[¶] . . . [¶]

"When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

"[¶] . . . [¶]

"[If you find that the defendant received a threat from someone else that [he] reasonably associated with [the victim], you may consider that threat in deciding whether the defendant was justified in acting in self-defense.]

"[¶] . . . [¶]

"The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the People have not met this burden, you must find the defendant not guilty of *<insert crime(s) charged>*."

"It is well-settled that even in the absence of a request, the trial court must instruct the jury on the general principles of law relevant to the issues raised by the evidence (*People v. Breverman* (1998) 19 Cal.4th 142, 154) and on defendant's theory of defense where '". . . it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense . . . .""' [Citations.]" (*People v. Olguin* (1981) 119 Cal.App.3d 39, 46.)

In this case, defendant was relying on a theory of self-defense and the failure to act in self-defense is an element of the offense that the People must establish. Thus, some instruction on self defense was necessary. This does not mean, however, that the trial court erred in failing to include the language from the instructions that defendant now argues was required. As we explain *post*, there was no error.

5

"Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) In examining the record for error in jury instructions, we consider the instructions as a whole and assume jurors are intelligent persons, capable of understanding and correlating all jury instructions which are given. (*Ibid*.) "'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (*Ibid*.)

## II

### *Specific Contentions*

Defendant complains that "the lack of a [3470] instruction meant the jury was not directed to consider all the elements in the case which might be expected to operate on the mind of a person in [defendant's] circumstances, with respect to self-defense." He adds that because 3470 was not given, the jury was not informed that: (1) if defendant's beliefs about the need to act in self-defense were reasonable, the perceived danger need not have actually existed; (2) the People had the burden of dispelling any reasonable doubts as to the existence of self-defense; and (3) a threat by one person, Wallace, could be interpreted to require self-defense against another person, such as Quinn and Ventimiglia. He observes that the absence of language on the need to avoid "imminent harmful or offensive" conduct contained in 3470 appeared to limit self-defense to a situation where the battery had already occurred. We address defendant's various contentions in the order we find most efficient.

#### A. *Burden of Proof*

Defendant first complains that by failing to give 3470, the trial court did not adequately inform the jury that the People bore the burden to dispel any reasonable doubt as to whether defendant's actions amounted to self-defense. We are not persuaded.

The trial court described and defined the beyond a reasonable doubt standard (CALCRIM No. 220); it instructed the jury that each fact essential to establish guilt must

be proven beyond a reasonable doubt (CALCRIM No. 220); and it told the jury that the fact that defendant did not act in self-defense was a fact the People were required to prove as to battery by a prisoner on a non-prisoner, and the lesser included offenses of simple battery and simple assault. (§§ 4501.5, 242, 243, subd. (a); CALCRIM Nos. 2723, 960, 915.) Thus, the jury was properly advised that the People bore the burden to dispel any reasonable doubts about whether defendant acted in self-defense.

B. *Appropriateness of Unchallenged Instructions*

Defendant next argues by failing to instruct with 3470, the trial court did not adequately advise the jury to consider "all the elements in the case which might be expected to operate on the mind of a person in [defendant's] circumstances." Defendant does not complain that the instructions given were incorrect. Rather, he claims that they were incomplete in that they did not incorporate those portions of 3470 that instruct: (1) if defendant's beliefs about the need to act in self-defense were reasonable, the perceived danger need not have actually existed; (2) self-defense can apply when facing an imminent prospective application of force; and, (3) a threat by one person could be interpreted by defendant to require self-defense against another.

"'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' [Citation.]" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.) Defendant made no such request here. Accordingly, his claims of instructional error are forfeited.

In any event, the claims lack merit. The reasonableness of a defendant's beliefs and conduct are judged from the viewpoint of a reasonable person in the same position as defendant. (*People v. McGee* (1947) 31 Cal.2d 229, 238.) "To do this, [the jury] must consider all the ""facts and circumstances . . . in determining whether the defendant acted in a manner in which *a reasonable man* would act in protecting his own life or bodily safety."" [Citation.]" (*People v. Jefferson* (2004) 119 Cal.App.4th 508, 518,

7

original italics.)  Here, the trial court appropriately instructed the jury that defendant was entitled to defend himself from unreasonable or excessive force by using the degree of force he actually believed was reasonably necessary to protect himself and use no more force than "*a reasonable person in the same situation* would believe is necessary for his or her protection."  (CALCRIM Nos. 2670, 2671, emphasis added.)  The phrase "in the same situation" includes considering "all the elements which might be expected to operate on the mind of a person in defendant's circumstances."

The trial court also clarified that the jury must decide all the facts based on the evidence admitted at trial.  The failure to expressly reference specific evidence cannot reasonably be construed as a direction to the jury to exclude that evidence from its consideration.  (*People v. Spencer* (1996) 51 Cal.App.4th 1208, 1220-1221.)  Similarly, the court instructed the jury that it must follow the law as the court explained it and to follow the instructions to the facts as it found them.  The court informed the jury that defendant had to actually and reasonably believe the use of force was reasonably necessary to protect himself.  It is not reasonable to presume the jury added the nonexistent requirement that defendant be correct in his assessment of the danger he believed he faced.  Thus, taken as a whole, the instructions adequately advised the jury to consider all the relevant circumstances in which defendant found himself.  (*Ibid*.)

While we agree that the instructions as given did not include an explanation that the person claiming self-defense must reasonably believe he is in imminent danger of being touched unlawfully or suffering bodily injury, this explanation does not apply to defendant's case.  An inmate has a limited right of self-defense against an officer.  (*People v. Saavedra* (2007) 156 Cal.App.4th 561, 569.)  A correctional officer may lawfully use force on an inmate to restrain a person, to overcome resistance, to prevent escape, or in self-defense, but the use of force must be reasonably calculated to further the lawful purpose.  (Pen. Code, § 835a; CALCRIM No. 2671; cf., Cal. Code Regs., tit. 15, § 3268, subd. (a)(1).)  The applicable statutes were fashioned to protect officers

"against violent interference with the performance of [their] duties" (*People v. Buice* (1964) 230 Cal.App.2d 324, 336; see also *People v. Martin* (2005) 133 Cal.App.4th 776, 782.)  Thus, an inmate's right to self-defense against an officer applies only when the inmate is faced with an *improper use of force* by the officer, because that is what renders the officer's conduct unlawful.  (See *People v. Coleman* (1978) 84 Cal.App.3d 1016, 1023.)  Thus, in this context, defendant did *not* have a right to use force to resist an officer *unless* that officer was actually using unreasonable or excessive force.  Prospective force by an officer does not trigger an inmate's right to defend himself as does *actual* use of *improper* force.

Defendant further claims that the trial court was required to tell the jury that if it found defendant had received a threat from Wallace that he reasonably associated with Quinn and Ventimiglia, it could consider that fact in assessing the reasonableness of defendant's actions.  Instructions need only be given on issues supported by substantial evidence.  (*People v. Shelmire* (2005) 130 Cal.App.4th 1044, 1055.)  "Substantial evidence is 'evidence which is reasonable, credible, and of solid value[.]' [Citations.]  On review, we determine independently whether substantial evidence to support a defense existed."  (*Id.* at pp. 1055-1056.)  Thus, to meet that standard in this case, there would have to be substantial evidence that defendant received a threat from Wallace and that he *reasonably* associated that threat with Quinn and Ventimiglia.  There is not substantial evidence for either claim.

There was no evidence that Wallace ever threatened defendant; rather, defendant's claim was that in response to defendant's refusal to inform on other inmates, Wallace assaulted him.  Thus there was no evidence defendant "received a threat from someone" such that this portion of the instruction would be merited.  (CALCRIM No. 3470; (Compare with *People v. Minifie* (1996) 13 Cal.4th 1055, 1061-1062, 1065-1066 (*Minifie*); *People v. Pena* (1984) 151 Cal.App.3d 462, 469-472.)

9

Further, even were we to construe Wallace's hitting defendant as a *threat received* by defendant from Wallace, there is no evidence defendant *reasonably* associated that threat with Quinn and Ventimiglia.[2]  A self-defense claim is viewed from the perspective of the defendant--threats from a family and its friends, a clan, a gang or another group "united against [defendant]" may reasonably affect defendant's state of mind, particularly when the group has a reputation for violence known to defendant.  (*Minifie, supra,* 13 Cal.4th at p. 1066.)  Here, there is no evidence that Wallace, Quinn and Ventimiglia were members of a group united against defendant.  Other than their status as officers, there was no evidence of any particular relationship or history between the officers or involvement in *any* group.  There is no evidence of any pre-existing animosity between defendant and the officers, no evidence of a history of unified activity by the officers, and no evidence of a record of concerted violence committed by the officers.  Nor is there any evidence the officers had a reputation for any such conduct.  This leaves only their status as fellow officers to support the inference they would act in concert to beat defendant because of his refusal to inform on other inmates.  Their status as officers alone cannot reasonably support such an inference.  To the contrary, when there is a physical altercation between an officer and an inmate, the other officers are obligated to intervene and break up, or end, the fight.  (Cal. Code Regs., tit. 15, § 3271, 3286, 3300; see also *Furtado v. State Personnel Board* (2013) 212 Cal.App.4th 729, 746-747.)  This is true whether defendant or Wallace were the aggressor; it is true even if Wallace were using excessive force.  (See *O'Neill v. Krzeminski* (2d Cir.1988) 839 F.2d 9, 11 ["A law

---

[2] To the extent defendant argues his acquittal of counts related to Wallace weakens his conviction of counts related to Quinn and Ventimiglia, we note only that it is well-settled that an acquittal on one charge does not change the strength of the evidence on another, which might have been due to lenity or other reasons. (See *People v. Lewis* (2001) 25 Cal.4th 610, 655–656; *People v. Brown* (1985) 174 Cal.App.3d 762, 769; *People v. Pahl* (1991) 226 Cal.App.3d 1651, 1656–1657.)

enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers"].)

An inference is not reasonable if it is based only on speculation. (*People v. Hughes* (2002) 27 Cal.4th 287, 365.) On this record, the reasonable inference to be drawn from the evidence of Quinn and Ventimiglia joining in the fight between defendant and Wallace is that they were joining *in order to end the fight*--in other words, doing their duty. "The right of the accused to have the jury instructed upon every theory of his innocence of the crime charged does not extend to a claim of self-defense based upon purely imagined facts or upon inference that could not be drawn by rational minds." (*People v. Hudgins* (1967) 252 Cal.App.2d 174, 179.) Since there was not substantial evidence to support this theory of defense, the court was not obligated to instruct on it. (*People v. Joiner* (2000) 84 Cal.App.4th 946, 972; see also *People v. Breverman* (1998) 19 Cal.4th 142, 162.)

### DISPOSITION

The judgment is affirmed.

                                                    DUARTE                    , J.

We concur:


            BLEASE                    , Acting P. J.


            MAURO                    , J.