Filed 2/24/15  P. v. Lopez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C074532 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F00536 ) |
| v. | |
| DAVID ELMO LOPEZ, | |
| Defendant and Appellant. | |

Defendant David Elmo Lopez appeals following guilty verdicts by jury for inflicting corporal injury on a former cohabitant (inflicting injury) (Pen. Code, § 273.5, subd. (a); count one);[1] knowingly resisting an executive officer by the use of force or violence (resisting) (§ 69; count two); and battery with injury against a peace officer (battery) (§ 243, subd. (c)(2); count three).  He contends the trial court erred in failing to

---

[1] Further undesignated statutory references are to the Penal Code.

1

stay execution of sentence, pursuant to section 654, on either the resisting or battery counts. Because we conclude substantial evidence supports the trial court's implicit finding that the multiple victim exception applied to preclude application of section 654, we shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and Rosemarie Stillwell were involved in a romantic relationship and had previously lived together. On January 22, 2013, Stillwell was visiting defendant at the house where he was living. The two argued, and as Stillwell tried to leave, defendant pushed her down some stairs, punched her in the head, and dragged her down the rest of the stairs. Stillwell ran to a neighbor's house and the neighbor called 911. When the police arrived, Stillwell told them defendant had hurt her and where he was (a few doors away).

The police went to the identified house to arrest defendant for domestic violence and an outstanding felony warrant. Officers Jeffrey Carr and Daniel Patterson positioned themselves at the front door. Patterson knocked, announced himself as a police officer, and asked to speak to "David." A male inside the house responded that "David" was not there. Patterson said he had to come in to make sure but the same male voice refused to open the door. Another officer, who could see inside the house, informed Patterson that a man matching defendant's description was near the door. A woman inside opened the door and backed away. Defendant then yelled at the officers and the woman who opened the door.

Patterson directed defendant to come outside with his hands raised, but defendant ignored his commands and continued yelling. Carr drew and armed his Taser, and aimed it at defendant. He instructed defendant to turn around and place his hands behind his head; defendant turned, placed one arm behind his back, and began walking backwards toward the officers. When defendant was within an arm's reach of Patterson and Carr, Patterson grabbed and held defendant's left arm from behind his back to handcuff him.

2

Defendant then grabbed the door frame with his right hand. Carr threatened to shoot defendant with his Taser, and defendant spun away from Patterson, knocked the Taser out of Carr's hand, and punched Carr above his right eye. Patterson tried to pull defendant out of the house, but defendant "yanked away" with enough force to rip his own shirt, fled back into the house, backed himself into a corner, and assumed a fighting stance. Carr followed defendant into the house, drew his baton, and instructed him to "[g]et on the ground." When defendant did not immediately comply, Patterson Tased him and officers handcuffed him.

In addition to inflicting injury (count one), the amended information charged defendant with resisting both Patterson and Carr (count two), as well as battery on Carr (count three). The jury found him guilty on all three counts, and the trial court sentenced him to an aggregate term of 13 years eight months: eight years for inflicting injury (count one; the upper term doubled due to defendant's prior strike); a consecutive 16 months for resisting (count two; doubled); a consecutive 16 months for battery (count three; doubled); and one year each for defendant's three admitted prior prison terms.

At sentencing, defendant's trial counsel argued that the resisting and battery counts were "one general course of conduct," although conceding "it's [*sic*] two separate victims that were found." Although trial counsel did not explicitly mention section 654, he argued for concurrent sentences on counts two and three, emphasizing the "one general course of conduct" argument. The trial court responded that while defendant's argument was "not unreasonable," there was "a separation of physical location and brief period of time between the battery on the first officer and the confrontation with the other officers" that justified, together with other observations irrelevant to our analysis here, consecutive sentencing on counts two and three.

## DISCUSSION

Defendant contends the trial court erred in failing to stay his sentence on either the resisting or battery convictions pursuant to section 654 because "[t]he battery constituted

3

the force and violence element for the resisting charge." He also argues that counts two and three arise from an "indivisible course of conduct." The People argue the multiple victim exception applies, because both Carr and Patterson were victims of defendant's efforts to resist arrest. We agree with the People.

We begin by explaining that the punch to Carr's head was not "an element" of resisting both officers; it was merely one of *multiple* acts demonstrated by the evidence at trial that *could* constitute forceful and violent resisting. The evidence showed that defendant punched Carr (constituting the battery), and also grabbed the door frame when Patterson tried to handcuff him and jerked away, knocked the Taser from Carr's hand, and yanked himself away from Patterson with enough strength to rip his own shirt. Thus defendant's argument that count three was "an element" of count two is meritless.[2] (See *People v. Mesa* (2012) 54 Cal.4th 191, 200 [discussing application of section 654 where commission of underlying crimes *is* an element of gang participation crime; concluding error to sentence on both underlying crimes and gang crime because the former was an element of the latter].)

---

[2] Defendant cites the prosecutor's closing argument to support his "element" claim, suggesting that because the argument briefly (and sloppily) suggested the punch, among defendant's other actions, constituted evidence of resisting, the trial court was required to apply section 654. But defendant fails to explain why--particularly given the lack of any evidence that the jury did, in fact, base its verdicts on erroneous or insufficient facts--we should concern ourselves with argument rather than with evidence. "[I]n the absence of some circumstance 'foreclosing' its sentencing discretion . . . , a trial court may base its decision under section 654 on any of the facts that are in evidence at trial . . . ." (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1340 (*McCoy*).) The cases defendant cites in purported support of his claim concern verdicts based on erroneous application of law to facts, due to erroneous *instruction*, and are not at all on point to his claim. We will not make his arguments for him, and we will not entertain arguments that are not supported by authority. (*Quail Lakes Owners Assn. v. Kozina* (2012) 204 Cal.App.4th 1132, 1137; see also *People v. Gurule* (2002) 28 Cal.4th 557, 618.)

4

We proceed to defendant's "course of conduct" argument. "Section 654 precludes multiple punishment where an act or course of conduct violates more than one criminal statute but a defendant has *only* a single intent and objective. [Citation.] In such circumstances, the court must impose but stay execution of sentence on all of the convictions arising out of the course of conduct except for the offense with the longest sentence. [Citation.]" (*McCoy, supra,* 208 Cal.App.4th at p. 1338.) "However, there is a 'multiple victim' exception to section 654. Under this exception, 'even though a defendant entertains but a single principal objective during an indivisible course of conduct, he may be convicted and punished for each crime of violence committed against a different victim.' [Citations.]" (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1781.) " ' "[W]hether a crime constitutes an act of violence that qualifies for the multiple-victim exception to section 654 depends upon whether the crime . . . is defined to proscribe an act of violence against the person." ' [Citation.]" (*People v. Martin* (2005) 133 Cal.App.4th 776, 782 (*Martin*).)

In a section 654 analysis, "we review the court's explicit or implicit factual resolutions for substantial evidence. [Citations.]" (*McCoy*, *supra*, 208 Cal.App.4th at p. 1338.) "We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

The trial court imposed consecutive sentences for counts two and three, which constitutes an implicit finding that section 654 does not apply to those counts. (See *People v. Osband* (1996) 13 Cal.4th 622, 730-731.) And, battery on a peace officer (§ 243, subd. (c)(2)) and resisting an officer (§ 69) are crimes of violence against the person qualifying for the application of the multiple victim exception to section 654. (*Martin*, *supra*, 133 Cal.App.4th at p. 782.) Thus, the only question we must decide is whether there is substantial evidence to support the implicit finding by the trial court that there were multiple victims of these acts of violence in this case.

In *Martin*, the court of appeal upheld a judgment imposing concurrent sentences on the defendant for resisting an officer and battery with injury on a peace officer. (*Martin*, *supra*, 133 Cal.App.4th at p. 779.) There, the defendant was handcuffed by officers. (*Id*. at p. 780.) As officers escorted the defendant to the patrol car, he tensed up and bent over. (*Ibid*.) One of the officers placed the defendant in "an arm-bar hold," and the defendant "jerked his body backwards and wrapped his leg around [that officer's] leg." (*Ibid*.) The officer "felt a sharp pain in his left shoulder and something popped." (*Ibid*.) Another officer "swept [the defendant's] left leg, knocking him to the ground, where [he] flailed around" and kicked at two other officers' legs. (*Ibid*.) The officer who sustained a shoulder injury required medical treatment. (*Ibid*.) The court of appeal found that "[t]he battery upon the officer [was not] intentional, but merely the result of [the defendant's] physical gyrations aimed at freeing himself." (*Ibid*.) Thus, it considered the acts part of a single course of conduct motivated by a single objective--to escape. (*Id*. at p. 781.) Nonetheless, the court concluded the multiple victim exception applied to preclude application of section 654 because Martin had "committed acts of violence against more than one victim; he resisted arrest by four different officers and battered one of them." (*Id*. at p. 783.)

Here, there is substantial evidence defendant knowingly resisted both Carr and Patterson in the performance of their duties "by the use of force or violence." (§ 69.) The evidence showed that defendant grabbed the door frame when Patterson tried to handcuff him, knocked the Taser from Carr's hand, and yanked himself away from Patterson with enough strength to rip his own shirt. Even disregarding the punch, there is ample evidence defendant "committed acts of violence against more than one victim" in the course of resisting an officer. There was no error.

6

## DISPOSITION

The judgment is affirmed.


                                        _____DUARTE_____, J.



We concur:



_____ROBIE_____, Acting P. J.



_____MURRAY_____, J.


7