[No. B177387. Second Dist., Div. Two. Oct. 24, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
ERIC BERNARD MARTIN, Defendant and Appellant.

## Counsel

Katharine Eileen Greenebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BOREN, P. J.**—Eric Bernard Martin appeals from a judgment entered upon his conviction by jury of corporal injury to a spouse (Pen. Code, § 273.5, subd. (a); count 1),[1] resisting arrest (§ 69; count 3) and battery with injury on a peace officer (§ 243, subd. (c)(2); count 4). The trial court found the allegation that appellant had suffered six prior felony convictions within the meaning of sections 1170.12, subdivisions (a) through (d) and 667, subdivisions (b) through (i) to be true. It sentenced appellant to three concurrent 25-years-to-life sentences. Appellant contends that the trial court erred in failing, pursuant to section 654, to stay execution of sentence on either the resisting arrest or battery with injury on a peace officer convictions.

We affirm.

## FACTUAL BACKGROUND

On July 27, 2003, appellant and his wife, Latonja Edkar, were at home, on Deming Avenue, in the City of Downey, County of Los Angeles. Appellant became agitated and was making "stupid," threatening remarks, frightening Edkar, and causing her to leave the house for the day. When she returned, appellant was still agitated. He went outside.

When appellant reentered the house, Edkar noticed that he had a small piece of what appeared to be rock cocaine in his hand. Appellant walked into the kitchen, followed by Edkar. He tried to light the item he was holding at the stove. Edkar asked him not to do so and "blew out the fire." Appellant tried to light the stove again, and Edkar blew out the pilot light. Appellant punched Edkar on the leg and nudged her over so he could get to the other side of the stove. When Edkar blew out the pilot on the other side of the stove, appellant again punched her leg. As a result of this punch, Edkar suffered a bruise on her left leg the size of a "50 cent piece," which hurt her for a couple of weeks. Appellant went behind the stove and tried to pull up the gas line. Fearing a gas leak, Edkar followed him and attempted to pull up appellant. Appellant arose first from behind the stove. When Edkar followed, she saw her brother holding appellant by his shoulder so he could not move his arms, because appellant held a knife in each hand. As this was occurring, a neighbor entered the house and said that the police had been summoned and that Edkar should go outside, which she did. Appellant went outside later, no longer holding the knives.

Uniformed Downey Police Officer Terrence Goeckner arrived at the scene. He spoke with the parties. Appellant told him that there was "just a little

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

domestic problem." Edkar appeared angry at times, and frightened of appellant at other times. She asked the officer to arrest appellant because he would kill her. When uniformed Officer Justin Prentice arrived, he saw Officer Goeckner speaking with appellant, so he spoke with Edkar. She was shaking, upset and frightened. Based on what she told him, and viewing her leg, Officer Prentice decided to arrest appellant.

As Officer Prentice placed appellant under arrest and handcuffed him, appellant was cooperative. Officer Prentice, and uniformed Officers Kurtz and Yepez, who were also at the scene, began walking appellant to the patrol car. Appellant tensed up, and Officer Prentice told him to relax. Appellant said he was not going to go to jail, and the officers would have to pull their guns and shoot him. He bent over, and Officer Kurtz placed him in an arm-bar hold. Appellant then jerked his body backwards and wrapped his leg around Officer Kurtz's leg. Officer Kurtz felt a sharp pain in his left shoulder and something popped. At that point, Officer Prentice swept appellant's left leg, knocking him to the ground, where appellant flailed around and told the officers to shoot him. He kicked at Officer Yepez's and Officer Goeckner's legs, as they tried to control his lower body. Officers Prentice and Kurtz tried to control his upper body. The officers were able to control appellant after imposing the total appendage restraint procedure.

As a result of the shoulder injury he sustained during the altercation, Officer Kurtz required medical treatment. He experienced pain in his left shoulder for two to three weeks and was placed on light duty during that time. He suffered no permanent injury.

## DISCUSSION

Appellant was convicted of spousal battery, resisting arrest and battery on a peace officer. The trial court sentenced him to three concurrent 25-years-to-life terms under the three strikes law. Appellant contends that the trial court erred in failing to stay execution of sentence on either his resisting arrest conviction or battery on a police officer conviction. He argues that because both offenses were incident to his sole objective to escape, section 654 precluded him from being punished for both.

Respondent contends that the multiple-victim exception prevents application of section 654. It argues that that exception provides that even though a defendant entertains only one principal objective during an indivisible course of conduct, he or she may be convicted and punished for each crime of force or violence committed against a different victim. Appellant's resisting five officers and battering one constituted crimes of force or violence against multiple victims.

■ Section 654 provides in part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, *but in no case shall the act or omission be punished under more than one provision.*" (§ 654, subd. (a), italics added.) A course of conduct that constitutes an indivisible transaction violating more than a single statute cannot be subjected to multiple punishment. (*People v. Butler* (1996) 43 Cal.App.4th 1224, 1248 [51 Cal.Rptr.2d 150].) "If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].) If, on the other hand, "[the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].) Section 654 turns on the objective in violating both provisions, not the Legislature's purpose in enacting them. (*People v. Britt* (2004) 32 Cal.4th 944, 952 [12 Cal.Rptr.3d 66, 87 P.3d 812].)

■ Whether multiple convictions are part of an indivisible transaction is primarily a question of fact. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583 [55 Cal.Rptr.2d 450].) We review such a finding under the substantial evidence test (*People v. Osband* (1996) 13 Cal.4th 622, 730–731 [55 Cal.Rptr.2d 26, 919 P.2d 640]); we consider the evidence in the light most favorable to respondent and presume the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Holly* (1976) 62 Cal.App.3d 797, 803 [133 Cal.Rptr. 331].)

We agree with appellant that his sole objective in both resisting arrest and committing battery on a police officer was to free himself. The battery upon the officer does not appear to have been intentional, but merely the result of appellant's physical gyrations aimed at freeing himself. The two offenses occurred, if not concurrently, in close temporal proximity, which although not determinative on the question of whether there was a single objective, is a relevant consideration. (*People v. Evers* (1992) 10 Cal.App.4th 588, 603, fn. 10 [12 Cal.Rptr.2d 637].) Hence, we conclude that section 654 applies to stay execution of sentence of either resisting arrest or battery on a peace officer, unless the multiple-victim exception is applicable.

■ As respondent points out, as a general rule, even though a defendant entertains but a single principal objective during an indivisible course of conduct, he may be convicted and punished for each crime of violence committed against a different victim. (*People v. Ramos* (1982) 30 Cal.3d 553,

587 [180 Cal.Rptr. 266, 639 P.2d 908], reversed on other grounds in *California v. Ramos* (1983) 463 U.S. 992 [77 L.Ed.2d 1171, 103 S.Ct. 3446].) " '[W]hether a crime constitutes an act of violence that qualifies for the multiple-victim exception to section 654 depends upon whether the crime . . . is defined to proscribe an act of violence against the person.' " (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1023 [109 Cal.Rptr.2d 464].) ■ We conclude that section 243, subdivision (c)(2), battery on a peace officer, and section 69, resisting arrest, are such crimes.

Battery on a peace officer proscribes an act of violence against a person. A battery is defined as "willful and unlawful use of force or violence upon the person of another." (§ 242.) Consequently, battery against a police officer is by statutory definition an offense subject to the multiple-victim exception.

The thrust of appellant's argument is that the multiple-victim exception is not applicable to section 69, resisting arrest, because "resisting arrest is not framed as a crime *against* the officers. In the definition of resisting an officer, the violence and force is [*sic*] implicitly used to get away from the officer not directed towards him. If resisting arrest were a crime against the officers, then the crime of battery against a police officer would be superfluous." We disagree.

■ Section 69 provides: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment." The statutory language specifically provides that the offense is one involving resisting an officer by "force or violence." It is designed to protect police officers against violent interference with performance of their duties. (*People v. Buice* (1964) 230 Cal.App.2d 324, 336 [40 Cal.Rptr. 877].) While the object of the offense may not be to attack a peace officer, its consequence is frequently to inflict violence on peace officers, or subject them to the risk of violence. ■ Whether the statute is framed as a crime "against the person" (*People v. Solis, supra,* 90 Cal.App.4th at p. 1023) or, while not so framed, is, in fact, such a crime, makes no difference in assessing whether the multiple-victim exception is applicable. The test is whether, *in fact,* a particular type of crime is a crime of violence against a person.

Other offenses that are not specifically directed "against the person" (*People v. Solis, supra,* 90 Cal.App.4th at p. 1023) have nonetheless been found to be crimes of violence invoking the multiple-victim exception. In

*People v. Pantoja* (2004) 122 Cal.App.4th 1, 15–16 [18 Cal.Rptr.3d 492], the Court of Appeal rejected a claim that the crime of child endangerment is not a crime of violence because the defendant did not direct acts at the child. Also, the crime of making a criminal threat, which does not inflict any physical violence, was found to be an act of violence against the person and within the multiple-victim exception to section 654. (*People v. Solis, supra,* at p. 1023.)

■ Whether the purpose of violence is to inflict harm on the officers or the harm is merely incidental to the goal of facilitating the perpetrator's escape, the consequence is the same; peace officers are subjected to violence and injury. As a result, the multiple-victim exception is applicable here, because appellant committed acts of violence against more than one victim; he resisted arrest by four different officers and battered one of them. The trial court therefore did not err in imposing concurrent sentences.

### DISPOSITION

The judgment is affirmed.

Doi Todd, J., and Ashmann-Gerst, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 8, 2006, S139483. Chin, J., did not participate therein.