Filed 8/27/13  P. v. Price CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHERYL LYNN PRICE,<br><br>    Defendant and Appellant. | F065051<br><br>(Super. Ct. No. VCF245231)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Brett Alldredge, Judge.

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine T. Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Poochigian, Acting P.J., Detjen, J. and Franson, J.

## INTRODUCTION

Defendant Cheryl Lynn Price (defendant) was convicted of two counts of resisting a peace officer. She contends that each offense was incident to a single objective. Therefore, she argues, the sentencing court erred in imposing a 30-day jail sentence on each count. (See Pen. Code, § 654, subd. (a).) We disagree and affirm.

## FACTS

### I.

### PROCEDURAL BACKGROUND

Defendant was charged with two counts of resisting an officer by threat or violence. (Pen. Code,[1] § 69.) A prior serious felony conviction was also alleged as to each count. (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d).)

After trial, the jury found defendant not guilty as to the two section 69 counts. The jury found defendant guilty of the lesser included offense of resisting a peace officer. (§ 148, subd. (a)(1).) Defendant was sentenced to 30 days in jail on count 1. On count 2, the court sentenced defendant to another 30 days in jail consecutive to count 1. Time was deemed already served on both sentences.

### II.

### TRIAL EVIDENCE

Jason Baillie (Baillie) is a correctional deputy for the Tulare County Sheriff's Department. In August 2010, Baillie was responsible for the custody, care, supervision, security, and transportation of inmates at the Adult Pretrial Facility at the Tulare County Jail. On August 15, 2010, Baillie was in the infirmary assisting a licensed vocational nurse attempting to take defendant's vital signs. Baillie and Deputy Sheriff Jerry Yang (Yang) accompanied the nurse into defendant's cell.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

2.

When the door to defendant's cell was opened, defendant was sitting on a bunk pressing the intercom button. Baillie testified that the intercom button was "an emergency button in case an inmate needs emergency assistance." Baillie entered the cell and defendant said, " 'What are you looking at[,] stupid?' " Baillie did not respond. The nurse advised defendant he was there to take her vitals. Defendant responded, " 'Why in the f**k did you lie saying I refused my meds?' " Baillie told defendant not to speak to medical staff in that manner and to calm down. Defendant responded, " 'F**k you too.' " Baillie testified that defendant's demeanor was "agitated" and "defiant" as she spoke. Her tone of voice was "antagonistic" and "loud."

Baillie observed defendant had a golf pencil "clenched" in her right hand. The pencil was approximately three to four inches long and had been sharpened at one end. The sharpened end was oriented towards Baillie, Yang and the nurse. Baillie told her to drop the pencil. Defendant responded, " 'F**k you,' " and did not drop the pencil. Baillie again told defendant to drop the pencil and to place her hands on the wall. Defendant did not comply and responded, " 'F**k you, hell no.' " Baillie attempted to grab defendant's right arm. Defendant moved her arm behind her back. Baillie grabbed her arm. Defendant began to "kick" and "flail" her legs, swing her arms, and scream.

Baillie attempted to pull defendant off of the bunk towards the ground. Defendant was "resisting backwards" as Baillie tried to "pull her forward" to the ground. After Baillie pulled her off of the bunk, she landed on her side. She moved from her side to her back and attempted to scratch Baillie's face. Both of her arms were "flailing towards" Baillie's face, and her nails were "out towards" Baillie.

Yang assisted by attempting to gain control of defendant's left arm. Defendant swung her closed fist at Yang. The swing came "pretty close" to Yang's face, but he was able to move and avoid being struck.

Eventually, Baillie was able to gain control of one of defendant's arms, and secure one of her hands in handcuffs. Yang gained control of her other hand and Baillie was able to handcuff her.

Baillie and others escorted defendant from her cell. Defendant yelled obscenities, dragged her feet, and made the deputies carry her entire body weight. After the incident, Baillie observed a one-inch scratch on his right forearm. Baillie did not have the scratch before entering defendant's cell that day, and that scratch was actively bleeding.

## ANALYSIS

### I.

### INTRODUCTION

Defendant contends that the sentencing court violated section 654 when it imposed sentences on both counts.

Section 654 provides, in part, that an "act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.…" (§ 654, subd. (a).) Case law has "engrafted" a broadened scope onto section 654. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211.) Now, the statute also prohibits multiple punishments where all of the offenses were incident to one objective. (*Id.* at p. 1208.)

Additionally, " 'there is a "multiple victim" exception to section 654. Under this exception, "even though a defendant entertains but a single principal objective during an indivisible course of conduct, he may be convicted and punished for each crime of violence committed against a different victim." ' " (*People v. Centers* (1999) 73 Cal.App.4th 84, 99.)

## II.

## STANDARD OF REVIEW

"As a general rule, the sentencing court determines the defendant's 'intent and objective' under section 654. [Citation.]" (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 268.) When a sentencing court imposes separate terms, we assume an implied finding that defendant had separate criminal objectives. (See *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378; *People v. Andra* (2007) 156 Cal.App.4th 638, 641. See also *People v. Osband* (1996) 13 Cal.4th 622, 730-731.) That implied finding " ' " 'will be upheld on appeal if it is supported by substantial evidence.' " ' " (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368.)

"We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

## III.

## MULTIPLE OBJECTIVES VS. MULTIPLE VICTIMS

"Section 654 precludes multiple punishment for a single act or omission, or an indivisible course of conduct. [Citations.]" (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) Determining whether defendant entertained one or more objectives and intents is a threshold inquiry for whether section 654 applies at all. (See *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1408.) On the other hand, the multiple victim exception only becomes relevant if that threshold factor is present; (i.e., there is a single objective or act). That exception permits multiple punishment " ' "*even though* a defendant entertains but a single principal objective during an indivisible course of conduct .…" ' " (*People v. Centers*, *supra*, 73 Cal.App.4th at p. 99, italics added.)

This concept can be illustrated by comparing the two cases relied on most heavily by the People: *People v. Hairston* (2009) 174 Cal.App.4th 231, 240 (*Hairston*) and

*People v. Martin* (2005) 133 Cal.App.4th 776 (*Martin*). Both cases involve resisting an officer. (See *Hairston*, *supra*, 174 Cal.App.4th at p. 233 [§148, subd. (e)]; *Martin*, *supra*, 133 Cal.App.4th at p. 779 [§ 69].) And, in both cases, the court concluded that multiple punishments were permissible. But the rationales of the two cases are different. *Hairston* upheld the implied finding that the "defendant had a *separate* objective for each violation of section 148." (*Hairston*, *supra*, 174 Cal.App.4th at p. 240, italics added.) That is, the threshold test for section 654's applicability (i.e., a single act or objective) was not met. Therefore, multiple punishment was permissible. (*Id.* at p. 240.) Conversely, *Martin* held the defendant's conduct did arise from *a single* objective, but multiple punishment was permissible nonetheless by virtue of the multiple victim exception. (*Martin*, *supra*, 133 Cal.App.4th at p. 781.)

As explained, *post*, we find substantial evidence supports the sentencing court's implied finding that defendant harbored separate objectives for each offense. Therefore, we need not determine whether the multiple victim exception relied on by *Martin* would have otherwise applied.

## IV.

### SUBSTANTIAL EVIDENCE SUPPORTS THE SENTENCING COURT'S IMPLIED FINDING OF SEPARATE OBJECTIVES

Defendant argues the evidence does not support an inference that she "formed separate and distinct intents to swing at one deputy and scratch at the other.…" She contends "the evidence indicated that her movements were incidental to being 'pulled around' by the deputies." We disagree, as the evidence supports a finding that defendant attempted to resist the deputies in distinct ways.

Baillie testified that defendant scratched him with her "nails out" and "fingers extended and separated." Baillie described defendant's arms as flailing "towards my

6.

face" and her nails as "out towards me." Defendant subsequently swung her "closed fist" at Yang. Her swing came "pretty close" to Yang's face.

This evidence suggests defendant intended to separately resist each deputy and to do so in distinct ways. In the separate instances of resistance, defendant's finger positions and arm movements were distinct in their nature ("closed fist" vs. "fingers extended and separated") and their direction (nails "out towards" Baillie vs. swinging "pretty close" to Yang's face). She scratched Baillie but tried to punch Yang. And, the evidence that her swing came "pretty close" to Yang's face suggests she was aiming at him. Similarly, the evidence that she flailed her arms "towards" Baillie's face with her nails "out towards" him suggest she was attempting to scratch Baillie specifically.

These facts support the sentencing court's implied finding defendant "formed a new and independent intent with each [deputy she] encountered." (*Hairston*, *supra*, 174 Cal.App.4th at p. 240.)[2] Like the *Hairston* court, "[w]e conclude on the facts of this case that substantial evidence supports the trial court's implicit determination that defendant had a separate objective for each violation of section 148." (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

---

[2] These facts also distinguish *Martin*. In that case, the defendant's movements did "not appear to have been intentional" and were merely "physical gyrations aimed at freeing himself." (See *Martin*, *supra*, 133 Cal.App.4th at p. 781.)