Filed 6/26/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B255339 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA061050) |
| v. | |
| MICHAEL A. NEWMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kathleen Blanchard, Judge.  Affirmed in part, reversed in part, and remanded for resentencing.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Timothy M. Weiner, for Plaintiff and Respondent.

_____

Defendant Michael A. Newman appeals from convictions of robbery, burglary and two counts of felony false imprisonment arising out of a single incident. He contends: (1) there was insufficient evidence of the "violence" element of felony false imprisonment and (2) the trial court erred in staying sentence on only one and not both false imprisonment convictions pursuant to Penal Code section 654.[1] The People contend the trial court erred in applying section 654 to even one of the two false imprisonment convictions. We affirm the conviction but remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

The limited nature of the appellate issues makes detailed recitation of the facts unnecessary. It is sufficient to state that, viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357–358), the evidence established the following: The Dragon Garden is a fast food restaurant in Lancaster. At about 9:00 p.m. on Sunday, October 6, 2013, defendant entered the Dragon Garden, walked up to the counter, brandished what appeared to be a firearm (but which may have been a BB gun) and demanded that the cashier give him money. Restaurant Manager Jian Xiong Ren (the robbery victim named in count one) described defendant as Black, of similar build to himself but taller, wearing light colored pants, a long-sleeved dark hoodie with the hood pulled up, something like a skimask covering his head, sunglasses and gloves. After Ren gave him money from the cash register, defendant reached over the counter and grabbed

---

[1] All future undesignated statutory references are to the Penal Code.

[2] Defendant and Justin Carroll were jointly charged with second degree robbery (count 1), second degree burglary (count 2) and two counts of felony false imprisonment (counts 3 and 4); as to both defendants, various prior conviction enhancements were also alleged, including pursuant to the Three Strikes law (§§ 667, subds. (b)-(i), 1170 subds. (a)-(d)). Defendant and Carroll were tried jointly by separate juries. Defendant was found guilty on all counts. After finding true the prior conviction enhancements, the trial court sentenced defendant to a total of 17 years, 4 months in prison, the details of which we discuss in connection with defendant's section 654 claim. Defendant timely appealed.

more money from the till; Ren calculated the total take as $1,223.  A recording of Ren's 911 call and a surveillance video were played for the jury.

Lourdes C. (the false imprisonment victim named in count four), recalled that she and her son and daughter were at the counter when an armed man entered the restaurant and demanded money.  When Lourdes and her daughter moved towards an exit, defendant turned towards them, pointed the gun in their direction and yelled that no one should move.  He then returned his attention to the money.  The daughter went back to the counter but Lourdes, fearful she would be shot, did not move throughout the incident. Lourdes and her children left the restaurant five or six minutes after defendant departed.

The son (the false imprisonment victim named in count three) recalled he was at the counter about to order when a masked man armed with a semiautomatic entered the restaurant, stood next to him, and screamed, "Give me the money.  Give me the money." Realizing there was a robbery in progress, the son backed away from the counter.  He discussed with his mother and sister the possibility of leaving.  But for defendant pointing the gun at his sister and yelling, "Nobody is going anywhere," the son would have left the restaurant.  Instead, he was too afraid.[3]

## DISCUSSION

### A.    Sufficient Evidence Supports the Conviction of Felony False Imprisonment

Defendant contends the convictions of felony false imprisonment by violence must be reduced to misdemeanor false imprisonment because there was insufficient evidence of *violence*, one of the factors that can raise false imprisonment from a misdemeanor to a felony.  He argues that, although the jury verdict forms identified the crime here as false imprisonment by *violence*, the evidence showed at most false imprisonment by *menace*, not *violence*.  The flaw in defendant's argument is predicated on the incorrect assumption

---

[3]    Although the son described the weapon as a semiautomatic, the only weapon found following a search of defendant's residence was a BB gun.  No firearm enhancements were alleged.

3

that false imprisonment by violence and false imprisonment by menace are different crimes, rather than different methods of committing the same crime.

After considering the evidence of the false imprisonment, and the instructions and verdict form provided to the jury, we conclude any defect in the verdict was inconsequential, and that substantial evidence supports the defendant's conviction of felony false imprisonment.

*1.        Overview of Different Means of Committing Felony False Imprisonment*

Section 236 defines misdemeanor false imprisonment as "the unlawful violation of the personal liberty of another." It is punishable as a felony if "effected by violence, menace, fraud, or deceit[.]" (§ 237, subd. (a).) Force is an element of both misdemeanor and felony false imprisonment, but to elevate the crime to a felony, the force used must be "greater than that reasonably necessary to effect the restraint." (*People v. Hendrix* (1992) 8 Cal.App.4th 1458, 1462.)

Section 237 lists "violence" and "menace" as two of the four methods of force that may elevate misdemeanor false imprisonment to a felony. It does not create four different felonies. (*People v. Henderson* (1977) 19 Cal.3d 86, 96, disapproved on another ground in *People v. Flood* (1998) 18 Cal.4th 470, 484 and 490, fn. 121; see *People v. Arvanites* (1971) 17 Cal.App.3d 1052, 1060 ["menace" and "violence" have different meanings; "menace" is not a modifier of "violence"].)

"Violence" in the statute means the exercise of physical force "greater than that reasonably necessary to effect the restraint." (*People v. Dominguez* (2010) 180 Cal.App.4th 1351, 1357; *People v. Babich* (1993) 14 Cal.App. 4th 801, 807.) "Menace" is an express or implied *threat* of force. (*People v. Wardell* (2008) 162 Cal.App.4th 1484, 1490-1491 [the act of holding a gun throughout imprisonment of the victim clearly implied a threat to use the gun if the victim did not comply, which was sufficient to support a finding of felony false imprisonment]; *Dominguez,* at p. 1359.)

4

## 2. Application to the Present Case

Defendant argues that the use in the verdict form of "violence" when there was no evidence of force applied to the victims means that the conviction was for misdemeanor false imprisonment. We disagree. *People v. Jackson* (2014) 58 Cal.4th 724, offers guidance. The defendant in that case challenged his conviction for felony murder; although he acknowledged the sufficiency of evidence to prove the murder occurred during an *attempted* robbery, he argued that because the verdict form referred to robbery, not attempted robbery, and there was insufficient evidence he committed a robbery, he could not be convicted of felony murder. (*Id*. at p. 750.) The *Jackson* court rejected this argument, reasoning: "The verdict form's failure to reference an attempted commission of robbery did not serve to limit the charges against defendant. Nor did the jury's return of that form restrict its finding to one of a completed robbery. 'A verdict should be read in light of the charging instrument and the plea entered by the defendant . . . . [T]he form of the verdict generally is immaterial, so long as the intention of the jury to convict clearly may be seen. [Citations.]' [Citations.] As indicated, both the prosecution and the court told the jury to return the verdict form if it found true the robbery-murder special-circumstance allegation, and the court repeatedly instructed that the allegation could be found true if the prosecution proved the murder had been committed during the commission or attempted commission of a robbery. In returning the verdict form, the jury clearly manifested its intention to find true the allegation charged. That the form did not describe all of the circumstances under which the allegation could be proved is, under these circumstances, merely a technical defect that may be disregarded because ' " 'the jury's intent to convict of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice.' " ' [Citation.]" (*Id*. at p. 750-751.)

We find the defect of which defendant now complains is also technical in nature.

Here, defendant was charged with felony false imprisonment of the son (count 3) and the mother (count 4) by "violence, menace, fraud and deceit" in violation of

5

section 236.  The prosecution's theory as to Counts 3 and 4 were based on defendant's single act of yelling "Nobody is going anywhere," while pointing a gun in the family's direction during the robbery.[4]

Pursuant to CALJIC No. 9.60, the jury was instructed:  "Defendant is accused in Counts 3 and 4 of having committed the crime of false imprisonment by violence or menace, a violation of section 236 of the Penal Code.  [¶]  Every person who by violence or menace violates the liberty of another person by intentionally and unlawfully restraining, confining, or detaining that person and compelling that person to stay or go somewhere without his or her consent is guilty of the crime of false imprisonment by violence or menace, in violation of Penal Code section 236.  [¶]  'Violence' means the exercise of physical force used to restrain over and above the force reasonably necessary to effect the restraint.  [¶]  'Menace' means a threat of harm express or implied by word or act.  [¶]  False imprisonment does not require that there be confinement in a jail or prison.  [¶]  In order to prove this crime, each of the following elements must be proved:  [¶]  1.  A person intentionally and unlawfully restrained, confined, or detained another person, compelling him or her to stay or go somewhere;  [¶]  2.  The other person did not consent to the restraint, confinement, or detention; and  [¶]  3.  The restraint, confinement or detention was accomplished by violence or menace."

Pursuant to CALJIC No. 3.30, the jury was also instructed:  "In the crimes charged in Counts 3 and 4, namely, false imprisonment by violence, there must exist a union of joint operation of act or conduct and general criminal intent.  General criminal intent does not require intent to violate the law.  When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful."

The verdict forms for Counts 3 and 4 read:  "We, the jury in the above-entitled action, find the Defendant, . . . , GUILTY of the crime of FALSE IMPRISONMENT BY

---

**4**   The District Attorney did not file false imprisonment charges as to the daughter. The parties do not discuss this apparent anomaly.

6

VIOLENCE, on or about October 6, 2013, in violation of Penal Code Section 236, a Felony, who did unlawfully violate the personal liberty of [Ricardo Castro (count 3) and Lourdes Castro (count 4)], said violation being effected by violence, menace, fraud, or deceit, as charged in [Counts 3 and 4] of the information."

Under *Jackson, supra*, the reference to "false imprisonment by violence," and the failure to mention false imprisonment by menace in the capitalized portion of the verdict form was "merely a technical defect that may be disregarded because ' " 'the jury's intent to convict of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice.' " ' [Citation.]" (*Jackson, supra*, 58 Cal.4th at pp. 750-751.)  We conclude the jury lawfully convicted defendant of two counts of felony false imprisonment, and that based on eyewitness and other testimony the judgment was supported by substantial evidence.[5]

**B.      Penal Code Section 654 Does Not Prohibit Defendant From Being Sentenced for False Imprisonment**

Defendant contends under section 654 the court erred in sentencing him to a consecutive sentence on one of the false imprisonment counts (count 3).  In the Respondent's Brief, the People argue that not only was it appropriate for the court to sentence consecutively on count 3, the trial court erred in applying section 654 to the other false imprisonment charge (count 4).  We agree with the People in both respects.

---

[5]      The body of the verdict signed by the jury lists all four statutory categories of felony false imprisonment:  violence, menace, fraud or deceit.  The "error" in the verdict form was in its summary of the crime, "FALSE IMPRISONMENT BY VIOLENCE."  CALJIC 9.60 given by the court is entitled "False Imprisonment by Violence or Menace."  The relevant CALCRIM Instruction, No. 1240, is entitled "FELONY FALSE IMPRISONMENT."  Using the CALCRIM instruction would have eliminated any uncertainty, and in our view it more accurately describes the crime.

*1. The Trial Court's Sentence*

Defendant was sentenced to a total of 17 years, 4 months in prison, comprised of the following:

- **Count 1** (second degree robbery of Ren): 10 years (five years doubled pursuant to Three Strikes), plus a consecutive 5 years (§ 667, subd. (a)), plus a consecutive 1 year (§ 667.5, subd. (b));

- **Count 2** (second degree burglary): 6 years, 16 months stayed pursuant to section 654;

- **Count 3** (false imprisonment of son): 16 months (one-third the 24 month mid-term doubled pursuant to Three Strikes), consecutive to count 1; and

- **Count 4** (false imprisonment of mother): 16 months (one-third the 24 month mid-term doubled pursuant to Three Strikes), stayed pursuant to section 654.

*2. Defendant's Contentions and Overview of Section 654.*

Defendant contends that his sentence on count three (false imprisonment of the son) should have been stayed under section 654, subdivision (a) in the same manner as the trial court stayed the sentence on count four (false imprisonment of the mother). Our analysis starts with the statute.

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

Section 654 was enacted in 1872.[6] Its purpose is to match punishment to the defendant's culpability. (*People v. Perez* (1979) 23 Cal.3d 545, 551; *People v. Vang*

---

[6] The statute was later amended as part of the transition to the Determinate Sentence Act. As a result of those amendments, "the original second sentence of the statute which contained cross-references to other Penal Code sections [was deleted]. (Stats. 1976,

(2010) 184 Cal.App.4th 912, 915-916.) To achieve this balance, the statute generally precludes multiple punishments for *a single physical act* that violates different provisions of law (*People v. Jones* (2012) 54 Cal.4th 350, 358) as well as multiple punishments for an *indivisible course of conduct* that violates more than one criminal statute. (*People v. Correa* (2012) 54 Cal.4th 331, 336 (*Correa*); *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1377 (*Ortiz*); *Vang,* at pp. 915-916.)

Section 654 does not bar multiple punishments in two settings. The first – the one relevant here – is the exception for an "act of violence" against multiple victims. If the defendant has engaged in an act of violence against two or more people, he may be punished separately for each crime. (*Neal v. State of California* (1961) 55 Cal.2d 11, 20-21 (*Neal*), disapproved on other grounds by *Correa, supra,* 54 Cal.4th at p. 338.) The second exception renders section 654 inapplicable to a course of conduct if the defendant " 'entertained multiple criminal objectives which were independent of and not merely incidental to each other . . . .' " (*People v. Martin* (2005) 133 Cal.App.4th 776, 780-781.) The application of this second exception " ' "depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." ' [Citation.]" (*People v. Leonard* (2014) 228 Cal.App.4th 465, 499; *Ortiz, supra*, 208 Cal.App.4th at p. 1377.)

### 3. *The Trial Court's Pronouncement of Sentence*

In explaining the basis for its sentencing choices, the trial court stated:

"With regard to the false imprisonment, I do think that is a separate violent act here. It is clear from the video that the robbery is in progress, but then the suspect deliberately turns to people who are trying to leave, points the weapon in that direction and says, 'Stay there.' I do think it is pointed in a general direction where a number of

---

ch. 1139, § 264, p. 5137; Stats. 1977, ch. 165, § 11, p. 644.)" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1207, fn. 1.) These amendments are not relevant to the present appeal.

people will be. I do plan on 654'ing one of the counts, but sentence consecutive on the other."

In its explanation, the trial court may have conflated the two exceptions. This might explain why it applied section 654 to one of the two false imprisonment charges but sentenced defendant on the other. The trial court apparently concluded that the robbery and false imprisonments reflected separate criminal objectives ("but then defendant turns to people trying to leave"), thus permitting it to sentence defendant on the false imprisonment charges on that basis. But its reference to "separate violent act" suggests the two false imprisonment victims had been subjected to an act of violence. That would have required the trial court to sentence separately for each of the two false imprisonment charges and would have precluded application of section 654 to either of those two counts. Nevertheless, the trial court applied section 654 to just one of the false imprisonments.

As we discuss next, we find the exception for an act of violence against multiple victims applies, thus permitting separate sentences for the robbery and the two false imprisonments. Accordingly we do not discuss the separate criminal objectives theory any further.[7]

> 4.      *Section 654's Exception For an Act of Violence Against Multiple Victims.*

Section 654 on its face makes no mention of an exception founded on defendant's commission of an act of violence on multiple victims during a crime episode. The word "violence" is found nowhere in the statute. Apparently the first reference to this notion came in *People v. Brannon* (1924) 70 Cal.App. 225 (*Brannon*).[8] *Brannon* is more appropriately seen as a double jeopardy case, not a separate punishment case. There the defendant was charged with one count of assault with a deadly weapon as to one victim

---

[7]      The Attorney General makes only a passing reference to the separate objectives exception; her principal argument is that the multiple victims exception applies.

[8]      Prior to *Brannon* only one appellate case had cited section 654 in any context, *People v. Coffey* (1911) 161 Cal. 433, 442.

and the murder of a second victim. Only one shot was fired at the two victims. The court held separate trials for the two crimes, and at the first trial the defendant was acquitted of assault with a deadly weapon. In the second trial he was found guilty of murder. The appellate court found the double jeopardy clause did not bar the second prosecution or conviction. The court reconciled two lines of double jeopardy cases from various jurisdictions across the country, and concluded there was no bar. Then the court considered section 654:

"Appellant calls our attention to section 654 of the Penal Code wherein it is declared that 'an act or omission which is made punishable in different ways by different provisions of this act, may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.' We do not think this section has the broad sweep which appellant claims for it. *We do not think it is applicable where, as here, the one act has two results each of which is an act of violence against the person of a separate individual.*" (*Brannon*, *supra*, 70 Cal.App. at pp. 235 - 236; italics added.)

*Brannon's* first impression rule that, section 654 notwithstanding, an act of violence committed against multiple victims may be punished separately apparently gained little immediate traction. It does not appear to have been discussed in any appellate opinion for the next 36 years until *Neal, supra*, 55 Cal.2d at pages 20-21. Borrowing language from *Brannon,* our Supreme Court in *Neal* held, "Section 654 is not '. . . applicable where . . . one act has two results each of which is an act of violence against the person of a separate individual.' [Citation.]" The *Neal* court explained: "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." (*Id*. at p. 20.)

11

In *Neal*, the defendant threw gasoline into the bedroom of a married couple. Both were severely burned. Defendant was convicted of two counts of attempted murder and one count of arson. The Supreme Court held that even though the arson and the attempted murders formed an indivisible course of conduct, separate punishments were still allowed for the two attempted murders. The one act of violence – the starting of the fire – was the basis of both attempted murder convictions. Because there were multiple victims of one act of violence, separate punishment was permitted. (*Neal, supra,* 55 Cal.2d at p. 21.)

*Neal's* holding was the first extended discussion of the principle that section 654 does not bar separate punishment when an act of violence is committed against multiple victims. Other than *Brannon*'s obscure use of section 654 in the context of double jeopardy, none of the cases principally relied on by the *Neal* court dealt with or even cited section 654.[9]

The California Supreme Court has reiterated the multiple victims rule in a number of cases since *Neal.* (See, e.g., *Correa, supra,* 54 Cal.4th at p. 341; *People v. Oates* (2004) 32 Cal.4th 1048, 1063; *People v. Latimer* (1993) 5 Cal.4th 1203, 1212*; People v. McFarland* (1989) 47 Cal.3d 798, 803; *Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, 350-351; *People v. Ramos* (1982) 30 Cal.3d 553, 589, reversed on other grounds by *California v. Ramos* (1983) 463 U.S. 992.)

---

**9** The *Neal* court also cited *People v. Majors* (1884) 65 Cal. 138, 146. *Majors* preceded Brannon by 40 years, but section 654 had been on the books since 1872. The statute is not cited. *Majors*'s holding was that a single act that kills two individuals constitutes separate crimes for which a separate prosecution may lay. (*Id.* at pp. 146-147.) Like *Brannon*, *Majors* may more appropriately be considered a multiple prosecution case than a multiple punishment case. *People v. Gaither* (1959) 173 Cal.App.2d 662 also dealt with whether a single act – the mailing of poison that injured a number of persons – constituted one or multiple offenses. The final case, *People v. Holman* (1945) 72 Cal.App.2d 75, dealt with whether multiple life sentences for murder were to be consecutive or concurrent. None of these cases cite section 654' nor did they expressly deal with multiple punishment.

The question unanswered in *Neal* and most of its progeny is what does "act of violence" mean. Section 654, as we have observed, does not use the term at all, so obviously it does not define it. *Neal* did not expressly address the point because there was little doubt that the crimes there – arson and attempted murder – were acts of violence. Many of the cases that have followed rightfully assume with little discussion that the act in question is one of violence and do not attempt to define the term. (E.g., *People v. Miller* (1977) 18 Cal.3d 873, 886 [robbery and burglary with great bodily injury], overruled on other grounds, as recognized in *People v. Oates, supra,* 32 Cal.4th at p. 1067, fn. 8; *In re Ford* (1967) 66 Cal.2d 183, 184 [robbery and kidnapping for robbery]; *People v. Calles* (2012) 209 Cal.App.4th 1200, 1216 [gross vehicular manslaughter].)

At the risk of engaging in extreme wordsmithing, we observe that as the multiple victims exception has developed, some courts have strayed from *Neal*'s articulation of the rule. *Neal's* expression was: "A defendant who commits an *act of violence* with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." (*Neal*, *supra*, 55 Cal.2d at p. 20; italics added.) Some courts, including our Supreme Court, have used "crime of violence" as a substitute for "act of violence." (E.g. *People v. Bauer* (1969) 1 Cal.3d 368, 378 ["A number of cases have upheld multiple punishment for a single criminal transaction where crimes of violence were committed against different persons."]; *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1290 ["Importantly, however, the multiple victim exception to section 654 only applies to crimes of violence against persons, not crimes against property."] We see little difference between "act of violence" and "crime of violence," in the context of what conduct triggers the multiple victims exception. (*People v. Miller, supra,* 18 Cal.3d at p. 885 [act and crime used interchangeably].)

We also observe that the term "act of violence" is not defined in terms of the violent felony statutes of the Three Strikes Law. Not only did section 654 precede Three Strikes by a century, courts have recognized that there is no clear-cut correlation between

the two statutes. For example, although burglary of a residence in the presence of another is a violent felony (§§ 667.5, subd. (c)(21), 1170.12 subd. (b)(1)) under the Three Strikes Law, burglary "standing alone is not a violent crime for purposes of the multiple victim exception." (*People v. Centers* (1999) 73 Cal.App.4th 84, 99; see also *People v Miller* (1977) 18 Cal.3d 873, 886 [burglary with infliction of great bodily injury is an act of violence].) We conclude that *Neal's* "act of violence," formulated years before the Three Strikes Law, is untethered to "violent felony" under three strikes.[10]

The first case that attempted to define act or crime of violence appears to have been *People v. Hall* (2000) 83 Cal.App.4th 1084 (*Hall*), overruled on another ground in *Correa*, *supra*, 54 Cal.4th at pages 343-344. In *Hall*, several peace officers responded to a man-with-a-gun call; when they confronted defendant, he brandished a loaded shotgun in the direction of the officers. Defendant pled no contest to three counts of exhibiting a firearm in the presence of a peace officer (§ 417, subd. (c)), each count referring to a different officer at the scene. The trial court imposed consecutive state prison sentences on each count. The Court of Appeal reversed, staying the sentence on two of the three brandishing charges. It concluded the act of brandishing was not an act of violence on multiple victims because "by its very definition [exhibiting a firearm is] not committed upon a peace officer, but only in the presence of a peace officer. The multiple-victim exception to section 654 requires multiple victims, not multiple observers." (*Id*. at p. 1087.)

In reaching its conclusion the *Hall* court considered a number of cases that had applied the multiple victims exception after *Neal*, and concluded:

"A review of the relevant case law since *Neal* reveals that in each case where a criminal act qualified for the multiple-victim exception, the criminal act – that is, the crime of which defendant was convicted, including any allegations in enhancement – was *defined* by statute to proscribe an act of violence against the person, that is, as *Neal*,

---

**10**     *Neal*, a 1960 case, preceded the Three Strikes Law and related statutes by some 30 years. Section 667.5 was enacted in 1977, 17 years after *Neal.*

14

*supra*, 55 Cal.2d at page 20, put it, an act of violence committed 'with the intent to harm' or 'by means likely to cause harm' to a person. (E.g., *People v. Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552]; *In re Ford* (1967) 66 Cal.2d 183 [57 Cal.Rptr. 129, 424 P.2d 681]; *In re Wright* (1967) 65 Cal.2d 650 [56 Cal.Rptr. 110, 422 P.2d 998]; *People v. Cruz* (1995) 38 Cal.App.4th 427 [45 Cal.Rptr.2d 148]; *People v. Masters* (1987) 195 Cal.App.3d 1124 [241 Cal.Rptr. 511]; *People v. Prater* (1977) 71 Cal.App.3d 695 [139 Cal.Rptr. 566].) Indeed, the California Supreme Court has stated that '[a] defendant may properly be convicted of multiple counts for multiple victims for a single criminal act *only* where the act *prohibited by the statute* is centrally an "act of violence against the person." ' (*Wilkoff v. Superior Co*urt (1985) 38 Cal.3d 345, 351 [211 Cal.Rptr. 742, 696 P.2d 134], quoting *Neal*, *supra*, 55 Cal.2d at p. 20, italics added.)" (*Hall, supra,* 83 Cal.App.4th at p. 1089.)

We agree with *Hall* that whether an act of violence has occurred for purposes of section 654 must be considered in light of the statute defining the crime of which the defendant has been convicted, but it must also be determined by what happened in the commission of  the crime.[11]  *Neal* and *Brannon* tell us that the essential question in determining whether the defendant's criminal conduct constitutes an act of violence for the multiple victims exception turns on what happened at the scene. It is the *act* of violence, not just the statutory language, that drives the exception to section 654. Stated slightly differently, "A defendant may properly be convicted of multiple counts for multiple victims of a single criminal act only where the act prohibited by the statute is centrally an 'act of violence against the person.' " (*Wilkoff v. Superior Court, supra,* 38 Cal.3d at p. 352.) As our colleagues in Division Two of this court have held, "The test is whether, *in fact,* a particular type of crime is a crime of violence against a person." (*People v. Martin, supra,* 133 Cal.App.4th at p. 782.) We next turn to an analysis of

---

[11]    *Hall's* definition has been cited in a number of decisions (see, e.g. *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1290 [vandalism not an act of violence]; *People v. Davey* (2005) 133 Cal.App.4th 384, 389-390 [indecent exposure not an act of violence]; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1023 [making criminal threats an act of violence]).

whether crimes that do not involve the direct application of force, such as false imprisonment by menace, involve "centrally an 'act of violence' against the person." (*Wilkoff,* at p. 352.)

     5.     *"Act of Violence" In the Context of Crimes That Are Not Always Inherently Violent.*

As we have observed, certain crimes unquestionably involve acts of violence: murder (*People v. Andrews* (1989) 49 Cal.3d 200, 225), attempted premeditated murder (*People v. Bragg* (2008) 161 Cal.App.4th 1385), kidnapping (*In re Ford, supra,* 66 Cal.2d at p. 184), robbery (*People v. Miller, supra,* 18 Cal.3d at p. 886), and assault (*People v. Prater* (1977) 71 Cal.App.3d 695). For other crimes, an act violence may be less apparent. Several appellate opinions have wrestled with this question, and have reached different conclusions.

For example in *Hall*, the court found no multiple victims exception because it concluded as a matter of law that the several peace officers were not victims of the brandishing crime but only "observers." "[T]he crime of exhibiting a firearm under section 417, subdivision (c), does not act upon an officer, but is only committed *in the presence* of an officer." (*Hall, supra,* 83 Cal.App.4th at p. 1096, italics in original.)

*People v. Kurtenbach, supra,* 204 Cal.App.4th 1264, 1290-1291 held that in a prosecution for arson and vandalism, the vandalism, although committed in a way that might be described as violent, was a property crime. Hence there were no multiple victims of an act of violence. *People v. Garcia* (2003) 107 Cal.App.4th 1159, 1162-1163, held that felony evading an officer (Veh. Code, § 2800.1) did not involve an act of violence even though the crime involves significant risk of harm to officers and bystanders. Hence the multiple victims exception did not apply when defendant evaded officers in several vehicles. In *People v. Davey, supra,* the defendant pled guilty to one count of annoying a child (Pen. Code, § 647.6) and four counts of indecent exposure (Pen Code, § 314.1). The indecent exposure counts related to two different dates on which he exposed himself to two children simultaneously. The appellate court concluded that

16

indecent exposure did not implicate an act of violence and hence the multiple victims exception did not apply. It held section 654 barred punishment for one of the counts on each date.

In contrast, several appellate courts have found that the multiple victims exception applied in situations where the violence was not so obvious. In *People v. Solis, supra,* 90 Cal.App.4th 1002, defendant was convicted of arson and two counts of making criminal threats (§ 422). The threats were directed at two roommates and left on a voice mail. On appeal defendant contended that he could be sentenced only on one of the threat convictions. The "dispositive question" for the court was "whether the crime of making a terrorist threat is an act of violence." (*Id.* at p. 1023.) Defendant argued that he did not have to actually intend to carry out the threat to be guilty of a criminal threat so there was no violence. "The argument misses the mark. The statute still requires the defendant to willfully make a threat which he intends the listener to understand as a threat and which causes sustained fear in the listener. This constitutes a crime of *psychic violence* which, if directed at separate listeners (victims) who each sustain fear, can be punished separately." (*Id.* at p. 1024, italics added.)

*People v. Pantoja* (2004) 122 Cal.App.4th 1, held that defendant could be separately punished for murder and child endangerment when he killed his girlfriend in the presence of their daughter. The defendant argued that child endangerment was not an act of violence because, not only did he not touch his daughter, his actions were not even directed toward her. The court held that even if the defendant did not intend to injure his daughter, there was "no doubt that defendant's acts harmed" her. (*Id.* at p. 16.) Although the *Pantoja* court did not cite *Solis*, its holding implicitly embraces the notion that "psychic violence" (*People v. Solis, supra,* 90 Cal.App.4th at p. 1024) is violence for the multiple victims exception.

Finally, in *People v. Martin, supra,* 133 Cal.App.4th 776, defendant was convicted of spousal battery (§ 273.5), resisting arrest (§ 69), and battery on a police officer (§ 243, subd. (c)(2)). Five officers were involved in the arrest; one of the officers was the victim of a battery. The court held that the resisting arrest was an act of violence against the

17

police officers and could be punished separately even though the actual touching – the battery – only involved one officer.

>    6.    *False Imprisonment By Menace As an Act of Violence*

We have found two cases that have considered whether false imprisonment by menace is an act of violence for purposes of section 654. They appear to reach opposite conclusions. In *People v. Foster* (1988) 201 Cal.App.3d 20, defendant and a confederate were convicted of robberies of three commercial establishments on separate occasions. After the men had completed their last robbery, they locked the robbery victim, another store employee and that employee's spouse into a store cooler. In addition to the robbery, the defendant was convicted of three counts of false imprisonment for the cooler incident. He was sentenced on all counts including consecutive counts on the three false imprisonment charges. The Court of Appeal concluded that "each false imprisonment count was punishable as a crime of violence against a separate individual." (*Id.* at p. 28.)

*People v. Islas* (2012) 210 Cal.App.4th 116 (*Islas*) appears to stand in contrast. There, the defendants were convicted of burglary and five counts of false imprisonment by violence or menace. The trial court sentenced defendants to concurrent terms on each of the false imprisonment counts. Defendants initially argued that at most the false imprisonment charges were misdemeanors. The Court of Appeal rejected that argument, concluding that sufficient evidence supported felony false imprisonment by menace. (*Id.* at pp. 124-128.) Instead it concluded that the concurrent terms for the five false imprisonments should have been stayed under section 654.

A brief summary of the facts in *Islas* helps explain the court's rationale. The two defendants, Islas and Giron, were gang members hanging out in front of a local stronghold. When police arrived the defendants ran into the building, climbed up a ventilation shaft and entered the bathroom occupied by a young woman and her four daughters aged 4 to 13. The court's description continued: "Islas and Giron were shirtless with their gang tattoos exposed; their heads were shaved and they wore baggy pants. One put his finger to his mouth and told [mother] to hide them from the police.

Giron turned off the lights in the apartment. [Mother] and her daughters huddled together while Islas stood and Giron sat on a couch six feet from them. When [mother] said she was scared, Islas and Giron told her they were not going to harm her. After 15 minutes, police officers knocked on the door. Islas told [mother] to pretend she was Giron's aunt. Giron answered the door and was pulled from the apartment by the officers. Islas was found hiding under a pile of clothes." (*Islas, supra,* 210 Cal.App.4th at p. 119.)

In rejecting separate punishments, the appellate court first concluded that the burglary was committed "entirely on entry with the intent to commit felony false imprisonment." (*Islas, supra,* 210 Cal.App.4th at p. 130.) As such, there was a single criminal objective and defendants could not be sentenced for false imprisonment in addition to the burglary. Turning to the act of violence against multiple victims exception, the court first concluded burglary without great bodily injury was not an act of violence, citing *People v. Centers*, *supra,* 73 Cal.App.4th at page 99. Its only discussion of act of violence and the multiple false imprisonment victims was: "Also, the convictions of felony false imprisonment were based on menace, not violence. Because none of the offenses was a crime of violence, the multiple victim exception does not apply." (*Islas*, at p. 130.)

If the *Islas* court was stating a rule that false imprisonment by menace cannot be an act of violence for purposes of the section 654 exception, we disagree with the court's analysis and do not adopt it here. At a minimum, it appears to stand in conflict with *People v. Foster, supra,* 201 Cal.App.3d 20, 28. If, however, the *Islas* court was holding that in the case before it, with the somewhat coincidental encounter between the defendants and the building residents and the lack of significant threats, there was insufficient evidence of violence by menace, then *Islas* is reconcilable with *Foster*.

19

7.    *The False Imprisonment Here Was an Act of Violence As a Matter of Law; in Any Event the Trial Court's Finding Was Supported By Substantial Evidence.*

Defendant contends that if he was convicted of felony false imprisonment by menace, not by violence, then he could not have committed an act of violence under section 654 when he pointed his weapon at his false imprisonment victims.  We disagree.

The multiple victims exception to section 654 is a statement of judicial policy that a defendant whose violent acts are aimed at or increase the risk of harm to several persons is more culpable than a defendant who harms only one.  (See *Neal*, *supra*, 55 Cal.2d at p. 20.)  As discussed previously, its application turns on the facts of the offense, not only the terms of the criminal statute that was violated.  In *Wilkoff*, *supra*, 38 Cal.3d at page 351, the court focused its inquiry on "whether the 'central element' of the offense – the act prohibited by the statute – had been committed more than once."  Citing *Ramos*, *supra*, 30 Cal.3d at page 589, the *Wilkoff* court said:  " 'Robbery is not merely the felonious taking of personal property.  Such a taking without more, is only theft. . . .  [¶]  We view the central element of the crime of robbery as *the force or fear applied to the individual victim* in order to deprive him of his property.  Accordingly, *if force or fear is applied to two victims in joint possession of property, two convictions of robbery are proper.*' "  (*Wilkoff*, at p. 351, italics added.)

Robbery at gunpoint is an act of violence under section 654.  (*People v. Miller*, *supra*, 18 Cal.3d at p. 873.)  If accomplished by nothing other than the mere display of a handgun, those must be robberies by fear under *Wilkoff* and *Ramos*.  The parallels between armed robbery and armed false imprisonment are definitionally compelling.  "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  (§ 211.)  Felony false imprisonment is principally committed by "violence or menace."  (§ 237, subd. (a).)

"Menace [for false imprisonment] is a threat of harm express or implied by words or act."  (*Islas*, *supra*, 210 Cal.App.4th at p. 123.)  In determining whether there has been

20

an express or implied threat of harm, the trier of fact "properly may consider a victim's fear." (*Id*. at p. 127.) In our view, therefore, false imprisonment by "menace," especially when carried out at gunpoint, is the equivalent of robbery by fear.

There is no doubt that defendant accomplished the armed robbery of the restaurant manager by an act of violence. That became no less violent when defendant pivoted from the manager and toward the family of bystanders, and pointed his gun at them.

In concluding that false imprisonment by menace can be, and was here, an act of violence, we therefore reject defendant's contention that false imprisonment committed by means other than violence cannot be a violent act for purposes of the multiple victim exception to section 654. Whatever superficial appeal that contention may have in the abstract, to create such a rule would be nonsensical, and we see nothing in the development of either section 654 or false imprisonment that compels such a result. (*People v. Johnson* (2015) 234 Cal.App.4th 1432, 1451 ["we must interpret legislative enactments so as to avoid absurd results"].)

If the bystanders here had been robbed, defendant unquestionably could have been punished separately for each of the robberies. (*People v. Miller*, *supra,* 18 Cal.3d at p. 886.) The only difference between that situation and the present one is that no property was taken from the bystanders. But the absence of a taking of property did not make defendant's conduct toward the bystanders less violent, it meant only that defendant did not engage in theft from the bystanders.[12]

In pronouncing sentence on the false imprisonment charges, the trial court here stated: With regard to the false imprisonment, I do think that is a separate violent act here. "We apply a substantial evidence standard of review when determining whether section 654 applies." (*People v. Kurtenbach*, *supra,* 204 Cal.App.4th at p. 1289.) Although the standard of review is applied most frequently in the context of whether the

---

[12]     We decline to extend the holding in *Hall* that when a suspect brandishes a shotgun in the direction of police officers, the officers are not victims but only observers. (*Hall*, *supra*, 83 Cal.App.4th at p. 1087.) False imprisonment is "the unlawful violation of the personal liberty of another." The "another" means there are victims of false imprisonment, not observers; one cannot falsely imprison a ghost.

21

defendant harbored single or multiple criminal objectives, we see no reason why the same deferential standard should not be applied here. Considering the use of a weapon directed toward the bystanders and the armed robbery conviction, we conclude substantial evidence supports the finding that there was an act of violence against multiple victims. In light of this holding, we need not address whether false imprisonment by menace always involves an act of violence such that if multiple victims are present section 654 does not apply as a matter of law.

> 8. *Remand is Necessary to Allow the Trial Court to Exercise Its Discretion in Sentencing Defendant on all Counts*

Our conclusion that section 654 does not bar punishment of defendant for the acts committed against the two false imprisonment victims means that the trial court incorrectly applied section 654 to the one false imprisonment charge that it stayed. In so doing it imposed an unlawful sentence. An unlawful sentence, including one that is inconsistent with section 654, may be corrected at any time. (*People v. Hester* (2000) 22 Cal.4th 290, 295.)

On remand the court should be given the opportunity to re-sentence on all three counts. The trial court shall impose sentence on each of the three counts. Other than holding that section 654 does not prohibit multiple punishment, we express no opinion on whether sentences should be imposed consecutively or concurrently; nor do we otherwise suggest how the court should act in exercising its sentencing discretion.

## DISPOSITION

The judgment is reversed for the purposes of allowing the trial court to re-sentence defendant on one count of robbery and two counts of false imprisonment without

/ / /

applying section 654.  In all other respects, the judgment is affirmed.


RUBIN, ACTING P. J.

WE CONCUR:



FLIER, J.



GRIMES, J.