Filed 4/24/23  P. v. Ngissah CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C095346 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE001921) |
| v. | |
| FRANCIS NGISSAH, | |
| Defendant and Appellant. | |

A jury found defendant guilty of misdemeanor false imprisonment and felony false imprisonment.  The trial court sentenced defendant to the upper term of three years in state prison for the felony, plus eight months in the county jail for the misdemeanor.

Defendant raises two claims on appeal.  First, defendant contends the trial court abused its discretion in admitting evidence of prior uncharged misconduct and five prior convictions because the evidence was offered to show his propensity to commit the current offenses and was unduly prejudicial.  To the extent his defense counsel failed to object to the admission of the prior convictions, defendant maintains he received ineffective assistance of counsel.  Second, he argues remand is appropriate because the

1

aggravating factors the trial court relied on in selecting the upper term are no longer valid under amended subdivision (b) of Penal Code section 1170.

We reject both claims. We acknowledge, with regard to defendant's second claim, that the trial court did not have the benefit of the amended statute at sentencing. However, because one aggravating factor on which the trial court relied was in fact proven beyond a reasonable doubt, and the trial court explicitly stated that it would find any one of the several aggravating factors that it cited enough to support its selection of an upper term sentence, any error was harmless and we find remand unnecessary. As for the first claim, we find no abuse of discretion or ineffective assistance. We therefore affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The People charged defendant with misdemeanor false imprisonment (Pen. Code, § 236—count one)[1] and felony false imprisonment of I.J. (§ 236—count two.) Defendant pleaded not guilty to both counts.

A. *I.J.'s trial testimony*

At trial, I.J. testified that after he left prison, he was defendant's roommate in an apartment provided by a postrelease reentry program. On the first night they met, defendant and I.J. shared their background. During the conversation, defendant offered to demonstrate "behavioral modification" to I.J., which would require I.J. to be tied up. I.J. felt he could not protest because of the peer pressure from defendant. Defendant grabbed I.J. aggressively, put I.J.'s hands behind his back, and wrapped tape around I.J.'s wrists and ankles. While I.J. was tied up, defendant lectured I.J. about changing his way of thinking. Out of fear that defendant may retaliate if interrupted, I.J. waited

---

[1] Undesignated statutory references are to the Penal Code.

approximately 45 minutes before he asked defendant to let him go. Defendant refused, and waited another 15 minutes before he finally released I.J.

Several days later, defendant became angry at I.J. because I.J. went to the store without informing him. He bound I.J.'s hands and ankles with zip ties. I.J. did not physically resist because he was afraid of defendant, but he repeatedly asked to be released; defendant refused. Eventually, after 25 minutes, defendant cut the zip ties when a program employee knocked on the door. I.J. told defendant's parole agent about the incidents.

B.    *Defendant's trial testimony*

Defendant testified at trial that while he was in the reentry program, both he and I.J. attended group therapy where they discussed their past crimes and what they had learned from their mistakes. Defendant shared in therapy that he had zip-tied someone in the past, and had more discussions with I.J. in private about the incident.

Defendant also claimed I.J. owed him money when they were in the program. Defendant demanded payment from I.J. when leaving the program, but I.J. said he did not have the money to pay him back. Shortly after, defendant learned from the police and his parole agent that he was accused of tying up I.J. with zip ties. Defendant believed I.J. manufactured the claims to avoid repaying the money.

C.    *The jury verdict and sentencing*

The jury found defendant guilty on both counts. The trial court sentenced defendant to the upper term of three years in state prison for the felony count, plus eight months in the county jail for the misdemeanor count. Defendant timely appealed.[2]

---

**2**    The notice of appeal was filed on December 14, 2021. Briefing was delayed due to defendant's filing errors and the parties' requests for extensions of time to file their briefs. The case was fully briefed on January 3, 2023.

3

DISCUSSION

I

*Admission of Prior Uncharged Conduct and Convictions*

Defendant argues the trial court erred in admitting into evidence his prior uncharged misconduct in 2010 and five prior convictions in 2014, all of which involved him tying up the victims. We disagree.

A.    *Additional trial background*

1.    *J.D.'s testimony*

In her motion in limine filed before trial, the prosecutor sought to admit, among other things, the testimony of J.D. about an uncharged incident in 2010, wherein defendant zip-tied J.D. The trial court allowed J.D. to testify, reasoning that the testimony was relevant to prove a common plan or scheme under Evidence Code section 1101, subdivision (b) and *People v. Ewoldt* (1994) 7 Cal.4th 380 (*Ewoldt*), and its probative value was not substantially outweighed by any prejudicial effect under Evidence Code section 352.

At trial, J.D. testified that defendant was his mentor when he was 16 years old. On one occasion, J.D. uttered curse words that defendant did not like, and defendant made J.D. do pushups. When J.D. got tired and stopped, defendant became very agitated. Defendant bound J.D.'s wrists with zip ties as punishment. J.D. fought defendant and repeatedly asked defendant to cut off the zip ties, but defendant refused. Defendant sat and watched J.D. plead for about five minutes before he finally released J.D.

The trial court instructed the jury to use J.D.'s testimony " 'for the limited purpose of deciding whether the Defendant had a plan or scheme to commit the offenses alleged in this case' " and " '[d]o not conclude from this evidence, that the Defendant had a bad character or is disposed to commit crime.' " During his closing argument, defense counsel also warned the jury "not to engage in propensity reasoning" when they considered J.D.'s testimony.

4

### 2.    *Prior convictions*

During cross-examination, when asked to elaborate on what he shared at group therapy, defendant responded, "I explained the situation that had happened, about an alleged victim that I had zip-tied or allegedly had zip-tied." Defendant further stated, "I was kind of frustrated and upset, because that case—I had gotten this letter from the DA's Office, that there was a Brady violation[3] in the case."

Following this testimony, the prosecutor requested to impeach defendant with prior convictions on the ground that defendant "opened the door" by discussing a prior conviction involving an alleged victim and admitting I.J. knew about the conviction. The trial court agreed, stating, "Right now the jury is left with the picture that, 'Oh, in 2014, there was some alleged victim and a Brady violation.' [¶] . . . That's a hundred and eighty degrees from the truth. And I'm not going to let the jury sort of sit with that impression." In response, defense counsel proposed that instead of introducing the prior convictions, the trial court should simply strike defendant's testimony as to the *Brady* violation. But the trial court rejected this proposal, reasoning the jury had heard testimony "about an alleged victim and a Brady violation" that "sound[ed] like there's something going on here, some kind of DA violation." Defense counsel then requested the prosecution "not [to] get into the facts" of the convictions should defendant admit the convictions, which the trial court accepted.

When cross-examination resumed, the prosecutor asked defendant if he recalled his earlier testimony about the alleged victim, to which defendant provided evasive answers. The prosecutor proceeded to impeach defendant with four felony convictions

---

**3**     Under *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215] and its progeny, the prosecution has the obligation to disclose evidence favorable to an accused. (*People v. Salazar* (2005) 35 Cal.4th 1031, 1042-1043.)

5

and one misdemeanor conviction in which defendant bound the victims with zip ties. Defendant admitted these convictions.

B. *Analysis*

As a general rule, evidence of prior crimes and uncharged misconduct is inadmissible to prove the defendant had the disposition to commit the charged crime. (Evid. Code, § 1101, subd. (a).)  But such evidence may be admitted when relevant to prove some fact, such as a common plan, other than the defendant's disposition to commit similar acts.  (Evid. Code, § 1101, subd. (b).)

"[T]he admissibility of uncharged crimes depends upon three factors:  (1) the materiality of the facts sought to be proved; (2) the tendency of the uncharged crimes to prove or disprove the material fact [i.e., probative value]; and (3) the existence of any rule or policy requiring the exclusion of relevant evidence [i.e., prejudicial effect or other § 352 concern]."  (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 238.)

"In order to satisfy the requirement of materiality, the fact sought to be proved or disproved must be either an ultimate fact or an intermediate fact from which such ultimate fact may be inferred.  [Citation.]"  (*People v. Hendrix, supra*, 214 Cal.App.4th at p. 239.)  A common design or plan is an intermediate fact.  (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1020.)

Evidence of a defendant's uncharged misconduct is relevant if it is sufficiently similar to the charged offense to support a rational inference of a common design or plan. (Evid. Code, § 1101, subd. (b); *People v. Foster* (2010) 50 Cal.4th 1301, 1328.)  In order to meet the degree of similarity required to prove a common design or plan, the evidence of uncharged misconduct must demonstrate " 'not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are individual manifestations.' "  (*Ewoldt, supra*, 7 Cal.4th at p. 402.)  These common features "must indicate the existence of a plan rather than a series of similar spontaneous acts."  (*Id.* at p. 403.)  Thus, evidence of

6

an uncharged misconduct that is similar to the charged offense may be relevant if it is "demonstrate[d] circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts." (*Ibid.*)

But even if evidence of uncharged misconduct is admissible under Evidence Code section 1101, subdivision (b), the trial court may still exclude the evidence if its probative value is substantially outweighed by its prejudicial effect under Evidence Code section 352. (*Ewoldt, supra*, 7 Cal.4th at p. 404.)

We review a trial court's exercise of discretion in admitting evidence for abuse. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.) We will not disturb the trial court's decision unless "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*Ibid.*)

### 1. *Prior uncharged misconduct*

Here, J.D.'s testimony satisfies the materiality requirement because it was admitted to prove that defendant acted according to a common design or plan—an intermediate fact. We reject defendant's argument that because the prosecutor failed to establish a nexus between the acts, they were independent of each other and spontaneous. "[A] common plan or scheme depends on the existence of striking similarities between the prior misconduct and the charged crime, and a nexus between the commission of the two is unnecessary." (*People v. Scheer, supra*, 68 Cal.App.4th at p. 1020.)

Defendant complains the prosecutor used J.D.'s testimony to prove that he "acted out of a tendency to be manipulative and domineering" and had a disposition to exploit vulnerable victims. In support of this proposition, defendant cites to the prosecutor's motion in limine, conversations between counsel and the trial court outside of the jury's presence, the prosecutor's questions to I.J. about defendant's personality, and the prosecutor's comments about defendant's personality during closing argument. But the motion in limine was not before the jury, nor were the conversations between counsel and

7

the trial court. We find no issue with the prosecutor's closing argument because she had "wide latitude during argument and may urge the jury to draw any reasonable inference from the evidence." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1331.) In addition, both the trial court and defense counsel specifically instructed the jury not to conclude from J.D.'s testimony that defendant had the propensity to commit the current offenses. These instructions helped mitigate the danger of confusing or misleading the jury. (*People v. Lindberg* (2008) 45 Cal.4th 1, 25-26.) In any event, because defense counsel made no objections to the prosecutor's questions about his personality or to the comments during closing argument, defendant has forfeited his claims. (*People v. Tully* (2012) 54 Cal.4th 952, 1014.)

Defendant additionally contends that while questioning him, the prosecutor improperly emphasized the power dynamic between defendant and J.D. by repeating J.D.'s testimony that he felt uncomfortable as a 16-year-old being tied up by a grown man. But repeating J.D.'s testimony was made necessary by defendant's evasive answers and allegation that J.D.'s testimony was untruthful. The prosecutor spent little time on the issue, asking only whether defendant heard J.D.'s testimony about being uncomfortable because he was tied up.

J.D.'s incident and the current offenses also met the similarity requirement. They all involved defendant binding the victims' hands and ignoring their pleas to be released. In both J.D.'s incident and count two, defendant tied up the victims by force with zip ties after their actions irritated him. These acts were sufficiently similar to demonstrate that defendant acted with a common plan to forcefully zip tie victims against their will. (See *People v. Chhoun* (2021) 11 Cal.5th 1, 28 [evidence of the defendant's prior misconduct was relevant to show he employed the same general plan on both occasions].)

Finally, the probative value of J.D.'s testimony was not substantially outweighed by its prejudicial effect. Evidence Code section 352 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the probability that its

8

admission will "create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." We are mindful that evidence of an uncharged offense " 'is so prejudicial that its admission requires extremely careful analysis.' " (*Ewoldt, supra*, 7 Cal.4th at p. 404.)

Here, J.D.'s testimony was not more inflammatory than defendant's charged offenses. Defendant tied up J.D. once for five minutes, and did not bind J.D.'s ankles. On the other hand, in the current offenses, defendant twice bound I.J.'s hands and ankles for over 15 minutes after I.J. asked to be released. Although J.D. was a minor when the incident occurred, he did not testify that he was afraid of defendant. Instead, J.D. immediately started fighting defendant when he was tied up. I.J., however, stated he was too scared to confront defendant both times.

We accept that because J.D.'s incident did not result in a conviction, the jury might have been inclined to punish defendant for tying up J.D. (See *Ewoldt, supra*, 7 Cal.4th at p. 405.) However, the record provides no evidence to support this hypothesis. The trial court instructed the jury on the limited purpose for which it could consider J.D.'s testimony, which "eliminated any danger 'of confusing the issues, or of misleading the jury.' " (*People v. Lindberg, supra*, 45 Cal.4th at pp. 25-26.) Defense counsel also warned the jury not to use J.D.'s testimony to conclude he had the propensity to commit the current offenses. We are satisfied that any prejudicial risk of J.D.'s testimony is counterbalanced by the instructions and the prosecution's need to prove each of the elements of the charged offenses. (See *id.* at pp. 25-26; *People v. Frazier* (2001) 89 Cal.App.4th 30, 42.)

We further reject defendant's argument that J.D.'s testimony was unnecessary to prove defendant's motive or involvement in the charged offenses, or was cumulative. As we explained *ante*, J.D.'s testimony was properly admitted to prove the existence of a common design or plan. Defendant entered a not guilty plea, thus putting in issue all elements of the charged offenses. (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 204.)

9

At trial, I.J. testified that he was alone with defendant during both incidents. Defendant denied he ever tied up I.J., instead claiming I.J. manufactured the claims to avoid repaying money owed to him. Although the prosecutor called several other witnesses, none testified they witnessed defendant tying up I.J. Additionally, no other evidence introduced by the prosecutor demonstrated that defendant forcefully tied up I.J., an element of felony false imprisonment in count two. (See *People v. Newman* (2015) 238 Cal.App.4th 103, 109.) Because no trial evidence rendered defendant's actions or involvement beyond dispute, J.D.'s testimony was not merely cumulative of other evidence. (See *People v. Foster, supra*, 50 Cal.4th at p. 1331.)

2. *Prior convictions*

Under Evidence Code section 780, subdivision (i), the trial court may admit for impeachment otherwise inadmissible evidence to prove or disprove the existence or nonexistence of a fact about which a defendant has testified. A witness opens the door to impeachment if he or she "seeks to mislead the jury or minimize the facts" of a prior conviction. (*People v. Smith* (2003) 30 Cal.4th 581, 634.) But the trial court may still exclude such evidence if its probative value is substantially outweighed by its prejudicial effect under Evidence Code section 352. (*People v. Dalton* (2019) 7 Cal.5th 166, 214.)

Here, defendant testified on cross-examination that he shared with the therapy group a "situation that had happened, about an alleged victim that I had zip-tied or allegedly had zip-tied." He further claimed the prosecutor failed to disclose evidence favorable to him. As the trial court correctly observed, this testimony called into question the legitimacy of the victim's allegation, and implied prosecutorial misconduct in relation to any conviction stemming from that allegation. Defendant therefore opened the door to impeachment. His four prior felony false imprisonment convictions involving him tying up the victims reasonably and logically tended to disprove defendant's testimony and are therefore admissible.

10

The trial court also did not abuse its discretion in admitting the circumstances underlying defendant's prior felony convictions under Evidence Code section 352. The prosecutor asked only whether defendant was convicted of tying up the victims, without elaborating on the facts underlying the convictions. Thus, "[a]ny prejudice was minimized by the fact that the evidence referred only to the bare fact of the convictions and nothing more." (*People v. Carkhum-Murphy* (2019) 41 Cal.App.5th 289, 298.)

Defendant contends the prior convictions were admitted as propensity and disposition evidence. But he cites to only one argument made by the prosecutor outside of the presence of the jury, and that argument was rejected by the trial court. We are satisfied from the record that defendant's prior felony convictions were properly admitted for impeachment.

We nevertheless agree with defendant that the trial court improperly admitted the prior misdemeanor false imprisonment conviction for impeachment. "Misdemeanor convictions themselves are not admissible for impeachment, although evidence of the underlying *conduct* may be admissible subject to the court's exercise of discretion. [Citation.]" (*People v. Chatman* (2006) 38 Cal.4th 344, 373.) However, the misdemeanor was admitted along with four other felony convictions, one of which involved the same victim. The jury gained little knowledge from the misdemeanor that it did not already gain from properly admitted evidence. Thus, it was not reasonably probable that the jury would have reached a verdict more favorable to defendant absent the error. (*People v. Partida* (2005) 37 Cal.4th 428, 439.)

### 3. *Ineffective assistance of counsel*

Defendant argues he received ineffective assistance of counsel because his trial counsel failed to object to the admission of the prior convictions. We disagree.

The burden of proving ineffective assistance of counsel is on the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].) To establish constitutionally inadequate representation, the defendant must show that (1) counsel's

11

performance was deficient; and (2) the deficient performance prejudiced the defense. (*Ibid*.)

We defer to trial counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel. (*People v. Weaver* (2001) 26 Cal.4th 876, 925.) On direct appeal, "competency is presumed unless the record affirmatively excludes a rational basis for the trial attorney's choice." (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260, italics omitted.) "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.]" (*People v. Gray* (2005) 37 Cal.4th 168, 207.) Failure to assert a meritless position does not demonstrate ineffective assistance of counsel. (*People v. Kipp* (1998) 18 Cal.4th 349, 377.)

The prejudice prong in *Strickland* generally "must be affirmatively proved" by the defendant except in limited circumstances not applicable here. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217.) To prove prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington, supra*, 466 U.S. at p. 694.)

Here, the record sheds no light on why defense counsel chose not to object to the admission of prior convictions. But there are possible satisfactory explanations. Defendant opened the door to impeachment because he gave misleading testimony. It was reasonable for defense counsel to conclude that an objection would be meritless. Instead, defense counsel made efforts to minimize the impact of the prior convictions evidence by requesting that the prosecutor not discuss the underlying facts, which the trial court adopted. And, although an objection to the admission of the misdemeanor might have merit, defense counsel may have, for tactical reasons, chosen not to object to

12

admitting the misdemeanor conviction. Otherwise, the prosecutor could have sought to introduce the facts underlying the misdemeanor for impeachment, which would be more damaging than the existence of the conviction itself. In any event, as discussed *ante*, admitting the misdemeanor conviction did not prejudice defendant.

## II

### *Senate Bill No. 567 (2021-2022 Reg. Sess.)*

Defendant argues remand is required because the trial court relied on aggravating factors that are no longer valid under Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731) (Senate Bill 567) in selecting the upper term for count two. We conclude any error was harmless and that remand is unnecessary.

### A.    *Additional sentencing background*

At the December 3, 2021 sentencing hearing, the trial court cited four aggravating factors that support the upper term: "[California Rules of Court, r]ule 4.421(a)(8), the manner in which the crime was carried out indicates planning, sophistication and professionalism; 4.421(b)(2), the Defendant's criminal history; 4.421(b)(4), the Defendant was on probation when the offense was committed"; and "the Defendant's blatantly false testimony while under oath at trial." The trial court noted, "[a]s a general matter, . . . if it has improperly considered the Defendant's trial testimony as an aggravating factor or if it has improperly considered any of the other aggravating factors, the existence of even one of these aggravating factors would justify the upper-term sentence imposed in this case."

### B.    *Analysis*

At the time defendant was sentenced, section 1170 provided that when a judgment of imprisonment is to be imposed and the statute authorizes three potential terms, "the choice of the appropriate term shall rest within the sound discretion of the court." (§ 1170, former subd. (b); Stats. 2020, ch. 29, § 15.)

While this appeal was pending, effective January 1, 2022, Senate Bill 567 amended section 1170, limiting the trial court's discretion to impose a sentence greater than the middle term. (§ 1170, subd. (b)(1).) Under amended section 1170, the trial court may impose the upper term only if the facts underlying the aggravating circumstances "have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) But the trial court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

We agree with the parties that Senate Bill 567 applies retroactively to this case. (*People v. Garcia* (2022) 76 Cal.App.5th 887, 902; *In re Estrada* (1965) 63 Cal.2d 740, 744.) We also agree with the parties that the trial court relied on factors no longer valid under amended section 1170 in selecting the upper term. We conclude, however, that remand is unnecessary.

It is undisputed that the trial court did not have the benefit of the amendments to section 1170 when it sentenced defendant. But, "before finding remand appropriate, [we] must first subject the trial court's error to harmless error review." (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1110.) This entails two layers of analysis. "We must first, for each aggravating fact, consider whether it is reasonably probable that the jury would have found the fact not true. We must then, with the aggravating facts that survive this review, consider whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts." (*Id*. at p. 1112.)

Here, whether the manner in which the crime was committed indicated planning, sophistication, and professionalism is a relatively subjective inquiry not capable of precise determination. "[T]o the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the

jury, the jury would have assessed the facts in the same manner as did the trial court." (*People v. Sandoval* (2007) 41 Cal.4th 825, 840, superseded by statute as stated in *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1132.) The same is true for whether defendant provided false testimony at trial, and whether this action constituted an aggravating factor.

There is also no certified record of defendant's criminal history. At trial, defendant admitted six prior convictions. Defendant argues his admission was not a stipulation to aggravating factors because he did not receive fair notice that the convictions could be used for an aggravated sentence. We need not resolve this issue because we conclude below that the jury could have found true, beyond a reasonable doubt, that defendant committed the current offenses while on parole, and the trial court would have selected the upper term based on defendant's parole status alone.

The record is overwhelming and uncontested that defendant committed the offenses while on parole. I.J. testified that both incidents took place while he was in a postrelease reentry program with defendant, and he reported the incidents to defendant's parole agent. Defendant also admitted his parole agent informed him of I.J.'s allegations and took him into custody. An error may be harmless beyond a reasonable doubt if the single permitted factor is " 'overwhelming and uncontested, and there is no "evidence that could rationally lead to a contrary finding." ' " (*People v. Lopez* (2022) 78 Cal.App.5th 459, 465.) Based on the record, we can conclude with confidence that the jury would have found true beyond a reasonable doubt that defendant was on parole when he committed the current offenses.

We recognize that the trial court stated defendant was on probation, instead of parole, when pronouncing the judgment. We also note, as defendant pointed out, that there was no evidence about his probation status presented at trial or at sentencing. The probation report made no mention of defendant's probation status. The prosecutor argued at the sentencing hearing that defendant was on parole at the time he committed

15

the current offenses, and defendant did not object. We thus agree with the People that the trial court simply misspoke when it stated defendant was on probation instead of parole at the time he committed the current offenses.

Next, we ask whether the record clearly indicates the trial court would have exercised its discretion to impose the upper term based only on defendant's parole violation.

In selecting the upper term, the trial court considered the nature of the offenses, defendant's criminal history and parole status, as well as defendant's behavior at trial. This satisfies section 1170, subdivision (b)(5)'s requirement that the court shall set forth on the record the facts and reasons for the sentence imposed. In evaluating these factors, the trial court explicitly stated that "the existence of even one of these aggravating factors would justify the upper-term sentence imposed in this case." This clearly indicates that the trial court would have been persuaded by defendant's parole violation alone to impose the upper term. Thus, any error was harmless.

DISPOSITION

The judgment is affirmed.

_____KRAUSE_____, J.

We concur:

_____DUARTE_____, Acting P. J.

_____McADAM_____, J. Pro Tem.*

---

\*    Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.